IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

**STEPHANIE CAMPBELL,**

    Plaintiff,

v.

**GANNETT COMPANY, INC., et al.,**

    Defendants,

Civil Action No. 4:21-cv-00557-RK

**SUGGESTIONS IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON COUNTS I, II AND III BASED ON IMPLIED LICENSE**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF UNCONTROVERTED MATERIAL FACTS ................................... 2

III. SUMMARY JUDGMENT STANDARD ........................................................................ 2

IV. ARGUMENT ................................................................................................................... 3

    A. This Court should grant Summary Judgment for Defendants on Counts I, II, and III because Defendants' use of the Sowers Photo was licensed ....................... 3

        1. Plaintiff's License to C&R and Microsoft .................................................... 3

        2. Microsoft's Sublicense to Defendants ......................................................... 4

        3. Defendants did not exceed the scope of the License .................................. 8

V. CONCLUSION ................................................................................................................ 8

# TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................. 2

*Effects Associates v. Cohen,* 908 F.2d 555 (9th Cir.1990) ............................................... 6

*Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898 (E.D. Mo. 2015) ...................... 3

*Lower Brule Sioux Tribe v. South Dakota*, 104 F.3d 1017 (8th Cir.1997) ................................... 2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..................................... 2

*Photographic Illustrators Corp. v. Orgill, Inc. (Orgill)*, 953 F.3d 56 (1st Cir. 2020) ........ 3, 5, 6, 7

*Teter v. Glass Onion, Inc.*, 723 F. Supp. 2d 1138 (W.D. Mo. 2010) ............................................. 8

**Rules**

Fed.R.Civ.P. 1 ..................................................................................................................... 2

Fed.R.Civ.P. 56 ................................................................................................................... 1

Fed.R.Civ.P. 56(c) .............................................................................................................. 2

Fed.R.Civ.P. 56(e) .............................................................................................................. 2

## I. INTRODUCTION

Defendants Gannett Co., Inc. ("Gannett"), and the other Defendants herein, all of whom are affiliates of Gannett, by and through undersigned counsel, pursuant to Fed.R.Civ.P. 56, move for summary judgment as to all claims asserted against them in Counts I, II and III of Plaintiff's Complaint for the reason that Defendants' use of the subject copyrighted photograph was pursuant to implied license.

This is an action alleging infringement of Plaintiff's copyright in a photograph (the "Sowers Photo"). Plaintiff licensed the Sowers Photo for use in a National Football League Super Bowl commercial for Microsoft, requiring no attribution or other credit, and the resulting commercial included no attribution. Microsoft, through its ad agency, asked that Defendant USA Today, a newspaper and news media website owned by Gannett, include the commercial in its Ad Meter program, along with 61 other Super Bowl commercials wherein persons can rate the commercials. USA Today promotes the program in its newspaper and through its content management system in its USA Today news network websites. So readers can view the commercials, a representative screenshot was used as a link to play them. A USA Today producer chose the Sowers Photo as a screenshot link for viewing the commercial, and the remaining Defendant publications linked to the screenshot and commercial. Plaintiff claims this infringed her copyright (Complaint, Doc. #1, Counts I-III) and that Defendants used the photograph after removing her name from it (Count IV).

Because Defendants were impliedly licensed to use the photograph for the limited purpose in which they used it, this Court should grant summary judgment for Defendants on Counts I-III.

## II. STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Defendants incorporate by reference the Statement of Uncontroverted Material Facts in Support of Defendants' Motions for Summary Judgment filed contemporaneously herewith.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–590 (1986). The moving party must establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Matsushita*, 475 U.S. at 586–90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Lower Brule Sioux Tribe v. South Dakota*, 104 F.3d 1017, 1021 (8th Cir.1997). To determine whether the disputed facts are material, "the disputes must be outcome determinative under prevailing law." *Id*. (citations omitted). Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." *Matsushita*, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

2

## IV. ARGUMENT

### A. This Court should grant Summary Judgment for Defendants on Counts I, II, and III because Defendants' use of the Sowers Photo was licensed.

Even if a plaintiff makes a *prima facie* showing of copyright infringement, "the defendant may avoid liability by establishing its use of the copyrighted work was authorized by express or implied license and/or fair use." *Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898, 904 (E.D. Mo. 2015). Likewise, a defendant may avoid liability if it establishes that use of the work was authorized by an express or implied *sub*license. *Photographic Illustrators Corp. v. Orgill, Inc. (Orgill)*, 953 F.3d 56, 64 (1st Cir. 2020) ("where a licensor grants to a licensee the unrestricted right to sublicense and permit others to use a copyrighted work, a sublicense may be implied by the conduct of the sublicensor and sublicensee."). Here, there is no genuine dispute that Plaintiff expressly licensed the Sowers Photo to C&R, who sublicensed it to Microsoft. (SUMF ¶¶ 11-12). In turn, Microsoft, via its ad agency, provided the Sowers Photo to Defendants for use in connection with placement of the BTO Ad in Ad Meter. (SUMF ¶¶ 28-30). In so doing, Microsoft effectively sublicensed the BTO Ad and its contents, including the Sowers Photo, for use in promoting Ad Meter. As such, Defendants' use of the Sowers Photo as a screenshot to play the BTO Ad was authorized and does not, as a matter of law, amount to copyright infringement.

#### 1. Plaintiff's License to C&R and Microsoft

By written agreement, Plaintiff granted C&R "an unlimited *(including all lifts, edits and versions)* non-exclusive, worldwide, all channels, irrevocable, license to use, market, promote, distribute, copy, reproduce, display, record, re-record, electronically publish, publicly display, transmit, broadcast, telecast, publicly perform, modify, alter, cache, synchronize with visual images, create derivative works of, and/or publish the whole or part of the [Sowers Photo], in any media whatsoever (whether now known or hereinafter developed)." (SUMF ¶ 12). Thus, Plaintiff

3

granted C&R a nonexclusive license to use Sowers Photo in any way it wanted. Additionally, Plaintiff granted C&R the right to sublicense any or all of these rights to Microsoft. (*Id.*).

### 2. Microsoft's Sublicense to Defendants

Microsoft then sublicensed, either expressly or impliedly, the Sowers Photo to Defendants when it submitted the BTO Ad to Gannett for use in and promotion of its Ad Meter program.

Plaintiff knew the Sowers Photo was to be used by Microsoft for advertising. This is evident by the headings in the agreement. Directly following the title of "Copyright License Agreement" is the heading "Sub-Licensee: Microsoft Corporation ('Microsoft')" followed by "Use: Advertising, including all lifts edits and versions." (SUMF ¶¶ 11-12; Exhibit E; Exhibit F). Advertising, by its very nature, requires publication; so Plaintiff cannot reasonably dispute knowing Microsoft would republish the Sowers Photo as part of its advertising program. Given that Microsoft is a software and electronics company and not an advertising agency, Plaintiff knew this republication would occur through other media. Moreover, the agreement granted sweeping rights to C&R and authorized C&R to sublicense "any or all of [the licensed] rights to Microsoft." *Id.* Consequently, Plaintiff granted Microsoft the right to "use, market, promote, distribute, copy, reproduce, display, record, re-record, electronically publish, publicly display, transmit, broadcast, telecast, publicly perform, modify, alter, cache synchronize with visual images, create derivative works of, and/or publish the whole or part" the Sower's Photo. (SUMF ¶¶ 11-12). Plaintiff's intent, evident from the agreement itself, was that Microsoft would reproduce, distribute, and publish the Sower's Photo from the BTO Ad as part of its advertising campaign.

Microsoft asked Defendants to publish the BTO Ad, including the Sowers Photo, on its behalf. (SUMF ¶¶ 28-30). Plaintiff complains that Defendants infringed her copyright by using the Sowers Photo as a screenshot to play the BTO Ad. A copyright owner does, of course, have the right to determine *who* will publish her copyrighted work to the world; but from the face of the

4

License, Plaintiff gave Microsoft sweeping rights to publish the Sowers Photo without any restriction on how, or by what methods, it could do so. (SUMF ¶¶ 11-12); *Orgill*, 953 F.3d at 63 (where there is a sublicense, "there is first a license, and the owner can set forth in the license the ground rules of the license itself -- including the rules by which the licensee may permit others to distribute the work," such as a condition "that sublicenses must be express, or perhaps even in writing."). If Microsoft had chosen to publish the Sower's Photo using its own content distribution scheme, for example by using the photo as a still to promote the BTO Ad, Plaintiff could not be heard to complain; she should not be heard to complain here either, where Microsoft instead used Defendants' single distribution network to do what it could have done itself.

After being implicitly authorized by Plaintiff to sublicense the Sowers Photo, Microsoft in fact did so when it via its ad agency submitted the BTO Ad to USA Today. (SUMF ¶¶ 28-30). This submission included an affirmative request to include it in the Ad Meter program: "I would like to submit Microsoft's 2020 Super Bowl ad, 'Be The One,' featuring Katie Sowers to the USA Today Ad Meter." (SUMF ¶ 28). The submission included a link to the video, hosted on YouTube for download. (SUMF ¶ 28). A second request followed, asking, "Can we please be included as part of the USA Today Ad Meter?" (SUMF ¶ 29). Although the words "a license to distribute, display, etc., the contents of this ad" did not appear in the submission, the license was at least implied by the affirmative request that USA Today publish the BTO Ad. *Orgill*, 953 F.3d at 60 ("Nothing in the Copyright Act requires that two parties' agreement to a sublicense be expressed in any specific language.").

In *Orgill*, Photographic Illustrators Corp. ("PIC") provided photographs to Sylvania, a lightbulb manufacturer, under a licensing agreement that stated: "PIC . . . hereby grants [Sylvania] a non-exclusive, worldwide license in and to all the Images and the copyrights thereto to freely

5

Use, sub-license Use, and permit Use, in its sole and absolute discretion, in perpetuity, anywhere in the world." *Id.* at 58. In turn, Sylvania provided Orgill, a company that marketed Sylvania lightbulbs, with PIC's photos for inclusion into Orgill's electronic and paper catalogs. *Id.* Orgill used the pictures for this purpose. *Id.* PIC sued Orgill for copyright infringement, and Orgill raised a license defense premised on the implied sublicense from Sylvania to Orgill. *Id.* at 58-59.

The first question presented to the court was whether an implied sublicense is even legally possible. The court noted that nothing in the Copyright Act requires the sublicense agreement to be expressed in any specific language, and no circuit court had ever addressed whether such a requirement existed. *Id.* at 60. The court surveyed federal common law on creating an initial license and observed that in general, a license "could be manifest and proven by the parties' conduct short of any magic words of assent." *Id.* at 61. The court reviewed the three-step *Effects* test used by various circuits to determine the existence of an implied license but rejected its literal application to implied *sub*licenses. *Id.* at 62 ("But it makes no more sense to use this test to assess the making of a sublicense than it would to require that an assignment of a mortgage meet the same requirements that might apply to the granting of a mortgage.") (referring to *Effects Associates v. Cohen,* 908 F.2d 555, 558-59 (9th Cir.1990)). The court next reviewed practical considerations, noting that the copyright owner/licensor can control the conditions of sublicensing by stating them in the agreement. *Id.* at 62-63. Where the copyright owner does so, the court said, courts need not be as protective of the copyright owner's rights. *Id.* at 63. Finally, the court rejected certain policy arguments, observing that "the issue here -- the level of formality required for a sublicense -- is far more removed from the heart of copyright law than the kind of dispute directly dealing with what copyright law protects, like whether a work is copyrightable or whether fair use applies as a

6

defense to copyright infringement." *Id.* at 63 (citations omitted). Based on this reasoning, the court held that Orgill used the photos under an implied sublicense.

*Orgill's* reasoning on this issue is sound and applicable to this case. Although Microsoft's right to sublicense is not explicit as in *Orgill*, as pointed out above, the circumstances show it was clearly implied in relation to its use to promote the BTO Ad. Plaintiff could have included a condition that sublicenses must be express, in writing, or forbidden altogether, but no such language appears. *Orgill*, 953 F.3d at 63. She could have restricted use of the Photo to use within the BTO Ad; instead, she granted C&R and Microsoft the right to use the Photo "in promotional materials in any media whatsoever," which is effectively what happened when the BTO Ad inclusive of the Photo was given to Defendants to promote the BTO Ad and Ad Meter. And given that Plaintiff originally licensed the Sowers Photo for use in advertising, an implied sublicense to Defendants would not create a danger that Plaintiff's work was used in an unintended way. Rather, it would be used precisely as originally intended, as evidenced by the license agreement itself to promote Microsoft and its BTO Ad.

Here, the facts show that Microsoft intended to grant an implied sublicense to Defendants. The nature of the business between Microsoft and USA Today makes it obvious that Microsoft wanted USA Today and its affiliates to copy and display the BTO Ad as much as possible. As a matter of common sense, when Microsoft delivered the BTO Ad with an affirmative request that Defendants include the ad in the Ad Meter program, it surely manifested its permission for USA Today and its affiliates to use the ad's content to promote the ad itself, even though no magic words were spoken. Microsoft knew and intended that USA Today and its affiliates would use the BTO Ad and the Sowers Photo and have never objected. In sum, it is indisputable that Microsoft

intended to grant the rights it possessed to copy, display, distribute, etc., the Sowers Photo to Defendants in and as part of the BTO Ad.

### 3. Defendants did not exceed the scope of the License

Finally, Defendants did not exceed the scope of their license. Microsoft did not sublicense the Sowers Photo to Defendants for any use whatsoever—rather, the sublicense was for the purpose of promoting the BTO Ad. Defendants only used the Sowers Photo in connection with the Ad Meter program and in promoting the Ad Meter program, as requested by Microsoft. Consequently, Defendants did not exceed the scope of the sublicense it was granted. Relatedly, that sublicense did not exceed the scope of the original license because the sublicensed use was limited to one of the many uses authorized by the original license: advertising.[1]

## V. CONCLUSION

The established facts entitle Defendants to judgment as a matter of law that Defendants' use of the Sowers Photo as a screenshot to view the BTO Ad was licensed. Summary judgment should be granted in their favor.

---

[1] These facts make this case distinguishable from an earlier case in this Court involving the alleged infringing use of photographs of artwork. In *Teter v. Glass Onion, Inc.*, 723 F. Supp. 2d 1138 (W.D. Mo. 2010), an art gallery claimed that a painter granted it an implied license to use his copyrighted works for advertising on the gallery's website. The court held that by conveying a copyrighted work to the gallery with the understanding of how it intended to use it, the painter conveyed an implied license. *Id.* at 1149. However, because the gallery used images of artwork other than those provided, a fact question precluded summary judgment as to those other uses. *Id.* at 1150.

Respectfully submitted,

**LEWIS RICE LLC,**

By: */s/ Joseph E. Martineau*
    Joseph E. Martineau, #32397MO
    Lindsey M. Bruno, #73055MO
    600 Washington Avenue, Suite 2500
    St. Louis, MO 63101-1311
    Telephone: 314.444.7729
    Fax: 314.612.7729
    jmartineau@lewisrice.com
    lbruno@lewisrice.com

    Scott A. Wissel
    1010 Walnut, Suite 500
    Kansas City, MO 64106
    Telephone: 816.472.2568
    Fax: 816.472.2500

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 6th day of January, 2023, a true copy hereof was served upon the following counsel of record, via e-mail, and that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

    Arthur K. Shaffer
    McDowell, Rice, Smith & Buchanan, P.C.
    605 W. 47th St., Suite 350
    Kansas City, MO 64112
    Telephone: (816) 753-5400
    Facsimile: (816) 753-9996
    ashaffer@mcdowellrice.com

*Attorneys for the Plaintiff*

By: */s/ Joseph E. Martineau*