IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| STEPHANIE CAMPBELL, | ) |
| --- | --- |
| Plaintiff, | ) |
| | ) Civil Action No. 4:21-cv-00557-RK |
| v. | ) |
| GANNETT COMPANY, INC., et al., | ) |
| Defendants, | ) |

**SUGGESTIONS IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**ON COUNTS, I, II AND III BASED ON FAIR USE**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF UNCONTROVERTED MATERIAL FACTS .................................... 2

III. SUMMARY JUDGMENT STANDARD ........................................................................... 2

IV. ARGUMENT ....................................................................................................................... 3

    A. This Court should grant Summary Judgment for Defendants on Counts I, II and III Because Defendants' Use of the Sowers Photo Qualifies as "Fair Use." ........................................................................................................................ 3

        1. Purpose and Character of the Use ............................................................... 4

        2. Nature of the Copyrighted Work ............................................................... 10

        3. The Amount and Substantiality of the Portion Used ................................ 11

        4. Market Effects ............................................................................................ 11

V. CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) ...................................................... 4

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313 (5th Cir. 2022) .......................... 9

*Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006) ...................... 8, 11

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395 (S.D.N.Y. 2016) ............ 6

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) .................................................. 4, 10, 12

*Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013) ................................................................................ 3

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................ 2

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) .................. 11

*Fitzgerald v. CBS Broad., Inc.*, 491 F.Supp.2d 177 (D.Mass.2007) ............................................... 6

*Google LLC v. Oracle America, Inc.*, 141 S.Ct. 1183 (2021) .................................. 3, 4, 8, 11, 12

*Holloway v. Pigman,* 884 F.2d 365 (8th Cir.1989) ......................................................................... 2

*Hustler Mag., Inc. v. Moral Majority, Inc.*, 606 F. Supp. 1526 (C.D. Cal. 1985), *aff'd*, 796
 F.2d 1148 (9th Cir. 1986) ....................................................................................................... 10

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) ................................................................ 7

*Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898 (E.D. Mo. 2015) ............... 4, 11

*Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL
 2684067 (S.D.N.Y. June 21, 2017) .......................................................................................... 5

*Lower Brule Sioux Tribe v. South Dakota*, 104 F.3d 1017 (8th Cir.1997) ..................................... 2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...................................... 2

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ............................................. 7

*Sony Corp. of America v. Universal City Studios, Inc. (Sony)*, 464 U.S. 417 ................................ 3

*Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769 (9th Cir. 2006) ....................... 4

*Wild v. Rockwell Labs, Ltd.*, No. 4:19-CV-00919-W-RK, 2020 WL 1921127 (W.D. Mo.
 Apr. 20, 2020) ........................................................................................................................... 3

*Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537 (S.D.N.Y. 2019) .............................................. 3, 5

**Statutes**

17 U.S.C. § 107 ................................................................................................................ 1, 3, 4, 5, 11

**Other Authorities**

4 Nimmer on Copyright § 13.05 ................................................................................................... 8

**Rules**

Fed.R.Civ.P. 12 ............................................................................................................................... 3

Fed.R.Civ.P. 56 ........................................................................................................................... 1, 2

**Constitutional Provisions**

U. S. Const., Art. I, § 8, cl. 8 ......................................................................................................... 5

## I. INTRODUCTION

Defendants Gannett Co., Inc. ("Gannett"), and the other Defendants herein, all of whom are affiliates of Gannett, by and through undersigned counsel, pursuant to Fed.R.Civ.P. 56, move for summary judgment as to all claims asserted against them in Counts I, II and III of Plaintiff's Complaint for the reason that Defendants' use of the subject copyrighted photograph was a fair use under 17 U.S.C. § 107.

This is an action alleging infringement of Plaintiff's copyright in a photograph (the "Sowers Photo"). Plaintiff licensed the Sowers Photo for use in a National Football League Super Bowl commercial for Microsoft, requiring no attribution or other credit, and the resulting commercial included no attribution. Microsoft, through its ad agency, asked that Defendant USA Today, a newspaper and news media website owned by Gannett, include the commercial in its Ad Meter program, along with 61 other Super Bowl commercials wherein persons can rate the commercials. USA Today promotes the program in its newspaper and through its content management system in its USA Today news network websites. So readers can view the commercials, a representative screenshot was used as a link to play them. A USA Today producer chose the Sowers Photo as a screenshot link for viewing the commercial, and the remaining Defendant publications linked to the screenshot and commercial. Plaintiff claims this infringed her copyright (Complaint, Doc #1, Counts I-III) and that Defendants used the photograph after removing her name from it (Count IV).

Because Defendants' use of the screenshot of the Sowers Photo was sufficiently transformative in that it facilitated comment and criticism about the commercial and served a different and functional purpose than the original photo, and because it had no significant effects on the marketability of the photo, Defendants' use constituted fair use as a matter of law under

17 U.S.C. § 107. For that reason, this Court should grant summary judgment for Defendants on Counts I, II and III of Plaintiff's Complaint.

## II. STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Defendants incorporate by reference the Statement of Uncontroverted Material Facts in Support of Defendants' Motions for Summary Judgment filed contemporaneously herewith.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-590 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 586-590.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Lower Brule Sioux Tribe v. South Dakota*, 104 F.3d 1017, 1021 (8th Cir.1997). To determine whether the disputed facts are material, "the dispute[s] must be outcome determinative under prevailing law." *Id*. (quoting *Holloway v. Pigman,* 884 F.2d 365, 366 (8th Cir.1989)). Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." *Matsushita*, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

## IV. ARGUMENT

### A. This Court should grant Summary Judgment for Defendants on Counts I, II and III Because Defendants' Use of the Sowers Photo Qualifies as "Fair Use."

Defendants' use of the screenshot of the Sowers Photo was fair under the Copyright Act. The "fair use" of a copyrighted work "for purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. "Any individual may reproduce a copyrighted work for 'fair use;' the copyright owner does not possess the exclusive right to such a use." *Sony Corp. of America v. Universal City Studios, Inc. (Sony)*, 464 U.S. 417, 433. Section 107 provides four factors for consideration: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107.[1]

These factors are not exhaustive, and the weight afforded each factor varies on a case-by-case basis. *Google LLC v. Oracle America, Inc.*, 141 S.Ct. 1183, 1197 (2021). Nor is there any particular order in which these or any other factors are analyzed. *See id.* at 1201. Section 107 sets forth "general principles, the application of which requires judicial balancing, depending upon relevant circumstances, including 'significant changes in technology.'" *Id.* at 1197 (citing *Sony*, 464 U.S. at 430). "[T]he concept [of fair use] is flexible, [and] courts must apply it in light of the sometimes conflicting aims of copyright law, and … its application may well vary depending upon

---

[1] Given the fact-intensive nature of the fair use defense, this Court has ruled this defense is generally inappropriate as grounds for dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *See Wild v. Rockwell Labs, Ltd.*, No. 4:19-CV-00919-W-RK, 2020 WL 1921127, at *3 (W.D. Mo. Apr. 20, 2020). Other jurisdictions, however, have held the opposite. *See, e.g.*, *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019) ("[W]hen 'the only two pieces of evidence needed to decide the question of fair use' are 'the original version' and the allegedly infringing version, it is proper to decide the issue on a motion to dismiss.") (quoting *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013)). Regardless, the present motion is not a Rule 12 Motion, but a Rule 56 summary judgment motion.

3

context." *Id.* Fair use is an equitable doctrine and a mixed question of fact and law, with the ultimate question being a legal one to be resolved by the court, not a jury. *Id.* at 1197, 1199-1200.

### 1. Purpose and Character of the Use

The first factor considers "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107. The focus of this factor is whether the use "merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is transformative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (cleaned up). "[A] transformative use is one that communicates something new and different from the original or expands its utility, thus serving copyright's overall objective of contributing to public knowledge." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015). "A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898, 910 (E.D. Mo. 2015) (quoting *Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006)). Importantly, "even making an exact copy of a work may be transformative so long as the copy serves a different function than the original work." *Id.* The more transformative the new work, the less significant the other factors. *Campbell*, 510 U.S. at 579.

Here, Defendants' use was transformative for at least two reasons. First, Defendants' use of the screenshot of the Sowers Photo facilitated "criticism, comment, [and] news reporting," 17 U.S.C. § 107, because it was used to promote a program wherein viewers compared and ranked their favorite Super Bowl commercials. (SUMF ¶¶ 20-23, 30). While Super Bowl commercials are designed to sell products, they transcend mere "ads." The commercials themselves are part of

4

the Super Bowl spectacle. They are a show-within-the-show, engendering critical commentary and sometimes controversy. They are an expression of creative and artistic talent presented to one of the largest audiences in America. The very fact that Ad Meter exists illustrates that people view Super Bowl commercials differently than other commercials. The use of the Sowers Photo quickly and efficiently informed viewers about the commercial's content, told them what to expect, and facilitated their viewing of the commercial. (SUMF ¶¶ 30-38). Further, it served to refresh the recollection of viewers who had already seen the commercial. (*Id.*). Through Ad Meter, the public is invited to compare, contrast and critique commercials aired during the Super Bowl, and Defendants' news reporting about Ad Meter facilitated that. As such, Defendants' use of the screenshot of the Sowers Photo as illustrative of the BTO Ad's contents, "promote[d] the Progress of… useful Arts." U. S. Const., Art. I, § 8, cl. 8.

Fair use has been recognized when screen shots are used for news reports about controversies surrounding viral internet videos or to identify controversial subjects. *See, e.g., Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) (a news report about a viral internet video might fairly display a screenshot or clip from that video); *Yang v. MIC Network, Inc.*, 405 F. Supp. 3d 537, 543-45 (S.D.N.Y. 2019) (screenshot of a copyrighted photo was transformative when it was used "to identify the subject of controversy[.]"). While not necessarily "controversial," there is no question that Super Bowl commercials are of great public interest and discourse. As such, the use here was ultimately for "criticism, comment, [and] news reporting" because the Sowers Photo was used to point the viewer to a commercial on which that viewer, and thousands of others, would vote, along with 61 other commercials. *See* 17 U.S.C. § 107.

5

Second, Defendants' use of the Sowers Photo was transformative in that it served a different function than the original work. It was not used just to depict Coach Sowers or "solely to present the content of that image," as in cases where fair use has been rejected. *See, e.g., BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 407 (S.D.N.Y. 2016); *see also Fitzgerald v. CBS Broad., Inc.*, 491 F.Supp.2d 177, 185-86 (D.Mass.2007) (finding a news outlet's use of a photojournalist's image of an arrest for the purpose of reporting on that arrest not transformative, as it used the photograph for the precise reason it was created). Rather, here, the screenshot of the Sowers Photo was used for the transformative purpose of identifying and making the BTO Ad available for legitimate commentary and evaluation by allowing a viewer to link to, watch, and evaluate the BTO Ad along with 61 other Super Bowl ads. (SUMF ¶¶ 40-43, 47-49). As such, it embodied a different kind of creativity: not capturing an artistic moment but capturing the essence of the video it depicts and of which Defendants sought public commentary and evaluation. Instead of standing on its own, the screenshot served as a representation of what is contained in the video and served as a bridge to view the video by clicking on it. As such, Defendants' use of the photo changed the purpose and character of the photo from "art" to a functional and utilitarian user interface.

This change in purpose is evident by comparing the original photo's purpose and character to the way Defendants used the photo as a link for viewing the ad. The original Sowers Photo was artistic in nature. Its purpose, according to Plaintiff, was to paint "a very artistic picture that tells a story," and not "just a snapshot." (SUMF ¶ 10). Defendants, however, used the screen shot of the Sowers Photo, not for its artistic rendering, but to show viewers what the BTO Ad was about and as means to watch and rate the ad in comparison with the 61 other submitted ads. (SUMF ¶¶ 21, 32-33, 38, 40, 47-48). As such, Defendants' screenshot of the Sowers Photo to link to the

BTO Ad, as exemplified below, is wholly distinct and transformative, in that it was functional, not artistic, serving as a viewport to the video. (SUMF ¶ 40).



(Complaint, Doc. #: 1, ¶ 92). In short, Plaintiff's artistic expression was transformed to a one frame summary of a Super Bowl commercial seen by millions and evaluated by thousands along with 61 other Super Bowl commercials.

In that respect, Defendants use of the screenshot of the Sowers Photo as a functional device for viewing the BTO Ad is similar to how thumbnails in a search engine are used to point users to more information. *See, e.g., Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) ("Arriba's use of Kelly's images promotes the goals of the Copyright Act and the fair use exception. The thumbnails do not stifle artistic creativity because they are not used for illustrative or artistic purposes and therefore do not supplant the need for the originals. In addition, they benefit the public by enhancing information-gathering techniques on the internet."); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) ("Google's use of thumbnails is highly transformative.... Although an image may have been created originally to serve an entertainment, aesthetic, or informative function, a search engine transforms the image into a pointer directing a user to a source of information."); *Bill Graham Archives v. Dorling Kindersley*

7

*Ltd.*, 448 F.3d 605, 607, 612, 615 (2d Cir. 2006) (images of concert posters, placed in chronological order, on a timeline in a book chronicling the Grateful Dead were both transformative and fair).

In addition to transformative use, in considering this first factor, courts consider whether the use was commercial. But while a finding that copying was not commercial "tips the scales in favor of fair use," "the inverse is not necessarily true, as many common fair uses are indisputably commercial." *Google*, 141 S. Ct. at 1204. Consequently, even if use of a copyrighted work was commercial, that fact alone is not dispositive. *Id.* While use of the Sowers Photo was in a commercial setting, this factor should be given relatively little weight in light of the transformative use of the screen shot of the Sowers Photo and its comparably incidental commercial use. Defendants were not seeking to sell or make money off the photo; they were using it as a means to view the BTO Ad in relation to 61 other Super Bowl ads. While Defendants derived commercial benefits from web traffic to their articles about Ad Meter, that benefit was indirect, incidental and no different than the benefit that would have been derived using another representative screenshot from the BTO Ad. Indeed, the use is comparable to that of the copyrighted computer code in *Google*, 141 S.Ct. 1183. There, the Supreme Court deemed "transformative" the use of *an exact copy* of certain computer code in part because that particular piece of code was "user facing" and was copied "only insofar as needed to allow programmers to call upon [other] tasks without discarding a portion of a familiar programing language and learning a new one." *Id.* at 1203. Here, the Sowers Photo serves as the actual user interface for accessing the BTO Ad and provides context as to what the ad is about.

Finally, though not a major factor, the good or bad faith of the defendant may also be considered in the purpose and character analysis. 4 NIMMER ON COPYRIGHT § 13.05[A][l][d] ("One frequent factor recognized by courts relevant to the 'character' of the use is the propriety of

the defendant's conduct."). While not excusing infringement, good faith factors into the equitable balance of a fair use determination. *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 322 (5th Cir. 2022). Defendants' conduct here weighs in favor of a finding of fair use. Defendants did not seek to undermine Plaintiff's rights or usurp those rights for monetary gain. They had no ostensible knowledge of any restriction in using the screenshot of the photo as a functional device for viewing the BTO Ad, any more than they had knowledge they could not use any other screenshot from the ad or any of the other ads in Ad Meter. As Rindner explained, "to me there would be no reason why I wouldn't be able to take a screenshot from the video that I'm being given and using it." (SUMF ¶ 39); *Id.* ("I do think that there is a difference between taking a screenshot of a video that were led to believe that we could use. And I feel like I kind of know that I couldn't just Google, you know, Tom Brady and take any picture off the Internet."); *see also* SUMF ¶ 38 ("The basis for us, as with all the Ad Meter videos provided to us or specifically to this one, is that it was provided to us for inclusion in the Ad Meter program. It was provided with no noted -- no restrictions noted as to content within the ad. … And a screengrab of the photo in question is a reasonable representation of the contents of that video.").

As such, to the extent that use of the Sowers Photo was unauthorized, such use was not in bad faith and entirely unintentional. Nothing in the BTO Ad referenced any restriction on use, and Plaintiff licensed the photo for use in the ad without requiring attribution. (SUMF ¶¶ 13, 19). While as a general rule, Gannett counsels against using screenshots, here the screenshot came directly out of a commercial Gannett was asked to promote. (SUMF ¶¶ 28, 29, 38).

In sum, Defendants' use of the Sowers Photo was transformational because it facilitated comment and criticism, and because it had an entirely different function from the original work.

9

Whereas the purpose of the original Sowers Photo was aesthetic, Defendants' use was functional, serving more as a user interface than a mere display.

### 2. Nature of the Copyrighted Work

The second factor to be weighed is the nature of the copyrighted work. This factor recognizes "that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. "The inquiry here concerns whether plaintiff's work is primarily creative as opposed to informational; the defense of fair use has been given a greater reach when the work copied is informational in nature." *Hustler Mag., Inc. v. Moral Majority, Inc.*, 606 F. Supp. 1526, 1536 (C.D. Cal. 1985), *aff'd*, 796 F.2d 1148 (9th Cir. 1986) (religious organization's copying of magazine parody featuring a fundamentalist minister as part of solicitation drive constituted "fair use" under copyright laws, where, although used in part to raise money, the copies were also used to rebut personal attack upon minister contained in the parody and make political comment about pornography). However, even where the copyrighted work is creative in nature, this factor may not weigh against a finding of fair use if the defendant did not use the work for its creative worth but rather for the purpose of criticizing, commenting on, or analyzing the work. *Id.* at 1537. ("While the court does not dispute this characterization of [the] work [as creative in nature], ... [defendants] did not borrow the [work] for its creative worth. Defendants copied it in order to criticize its contents and protest its publication. Whatever value the article had for defendants was purely communicative and informational in character. For these reasons the inventive and creative nature of [the copyrighted] work is not very significant here."). Even if the Sowers Photo falls closer to the core of copyright protection due to its creative nature, this factor may be given little weight in light of Defendants' transformative use into a purely functional, informational feature.

### 3. The Amount and Substantiality of the Portion Used

"With regard to the third factor, the Court considers whether the 'amount and substantiality of the portion used in relation to the copyright work as a whole,' 17 U.S.C. § 107(3), is 'reasonable in relation to the purpose of copying.'" *Kennedy*, 143 F. Supp. 3d at 911 (quoting *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1402 (9th Cir. 1997)). This factor will generally weigh in favor of fair use where "the amount of copying was tethered to a valid, and transformative, purpose." *Google*, 141 S.Ct. at 1205. Even where a defendant uses "each photograph at issue in its entirety [this may be] justifiable where the purpose of the work differs from the original." *Kennedy*, 143 F. Supp. 3d at 911.

While Defendants used the entire photo, that use was tethered to a transformative purpose: linking viewers to the BTO Ad. The photo was not copied for its own sake but because it appeared, in its entirety, within the BTO Ad, and because it served as a representation of what was contained within the ad. Because the screenshot was tied directly to its transformative use, this factor should weigh in favor of a finding of fair use, but to the extent it weighs against fair use, it should weigh relatively little in relation to the other factors.

### 4. Market Effects

The fourth factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. While the impact on licensing revenue of a plaintiff is a proper subject for consideration, "courts have held it is not the sort of negative effect on the market that weighs heavily against a finding of fair use." *Kennedy*, 143 F. Supp. 3d at 912 (citing *Bill Graham*, 448 F.3d at 614). "If it were, then the market factor would always weigh in favor of the copyright holder and render the analysis of this factor meaningless." *Id.* Where the use is transformative, "market harm cannot be readily inferred." *Id.* Moreover, the analysis takes into

11

Case 4:21-cv-00557-RK    Document 87    Filed 01/06/23    Page 15 of 18

account a balancing of the public benefits of allowing or disallowing the use. *Google*, 141 S.Ct. at 1206.

Defendants' use of the screenshot of the Sowers Photo has not had, and will not have, any appreciable effect on the market for the Sowers Photo. Defendants' use of the Sowers Photo was not a market substitute for the original because in many cases, the photo was altered to include a play button to link to the BTO Ad. (SUMF ¶¶ 37, 43). And, notably, Defendants' use of the Sowers Photo as a link to play the BTO Ad generated no greater likelihood of non-compensated use by others than resulted from Plaintiff's own actions in licensing the photo for use in an advertisement to be displayed, without attribution or watermark, not just on television, but on the internet in You Tube where anyone can copy it. To the extent the market value of the Sowers Photo has been limited, it results from the permitted use within the BTO Ad, not the use of the photo altered with a play arrow. Indeed, it is entirely inconceivable that anyone intent on using the photo would use the photo as displayed on Defendants' websites. Instead, they would use screenshot from ad, which is readily available on You Tube and any number of websites, pursuant to the License to which Plaintiff agreed.

In any case, the Defendants' use was transformational, making this factor of relatively low weight. *Campbell,* 510 U.S. at 579 ("the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use"). Likewise, the public/private benefit analysis weighs in favor of fair use when Defendants' exact use is taken into account. Plaintiff does not and cannot complain about the Defendants' linking to the BTO Ad and displaying it on their platform; she only complains that Defendants used the Sowers Photo as a screenshot to link to the ad. But this activity makes logical and practical sense.

12

Case 4:21-cv-00557-RK   Document 87   Filed 01/06/23   Page 16 of 18

If a potential viewer comes across a linked video, and all the viewer sees is a black box, a play arrow, or an image not representative of the video's content, that viewer is more likely to skip the video. Thus, prohibiting the use of a screenshot from within a video to act as a representation of that video not only lacks any real sense, it actively works against the purpose of copyright to promote the arts. With a screenshot image, however, the viewer has more of an idea of whether she wants to view, and potentially comment, critique, or rate the video.

Finally, Defendants did not merely copy the Sowers Photo from somewhere on the Internet to act as the representative image of some random video, or even of some video it had produced. Rather, in seeking an image to represent the video submitted to them for the purpose of wider dissemination, Defendants took a screenshot from within that video to serve as the means to view the video. This kind of use of copyrighted images makes perfect sense, promotes the sharing of art and science, and cannot be said to adversely affect the market for those copyrighted images because those images *are already contained within those published videos*. In short, Defendants' use of the Sowers Photo cannot be said to have impacted, in any significant way, the market for Plaintiff's photo of Katie Sowers.

## V. CONCLUSION

In sum, using a screenshot from within a video to serve as the link for viewing that video is transformational, newsworthy, and promotes the progress of the arts. The commercial nature of this use is incidental and does not create a substitute market for the copyrighted work. For all these reasons, Defendants' use of the Sowers Photo was fair, and summary judgment should be granted in their favor.

Respectfully submitted,

LEWIS RICE LLC,

By: */s/ Joseph E. Martineau*
Joseph E. Martineau, #32397MO
Lindsey M. Bruno, #73055MO
600 Washington Avenue, Suite 2500
St. Louis, MO 63101-1311
Telephone: 314.444.7729
Fax: 314.612.7729
jmartineau@lewisrice.com
lbruno@lewisrice.com

Scott A. Wissel
1010 Walnut, Suite 500
Kansas City, MO 64106
Telephone: 816.472.2568
Fax: 816.472.2500

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

The undersigned certifies that on this 6th day of January, 2023, a true copy hereof was served upon the following counsel of record, via e-mail, and that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

Arthur K. Shaffer
McDowell, Rice, Smith & Buchanan, P.C.
605 W. 47$_{th}$ St., Suite 350
Kansas City, MO 64112
Telephone: (816) 753-5400
Facsimile: (816) 753-9996
ashaffer@mcdowellrice.com

*Attorneys for the Plaintiff*

By: */s/ Joseph E. Martineau*