IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STEPHANIE CAMPBELL, | ) |
| Plaintiff, | ) ) ) |
| | ) Civil Action No. 4:21-cv-00557-RK |
| v. | ) ) |
| GANNETT COMPANY, INC., et al., | ) ) |
| Defendants. | ) |

**SUGGESTIONS IN SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFF'S CLAIM FOR DISGORGEMENT OF PROFITS**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF UNCONTROVERTED MATERIAL FACTS ................................... 1

III. SUMMARY JUDGMENT STANDARD ........................................................................ 2

IV. ARGUMENT ................................................................................................................... 3

    A. Profits Are Recoverable Only Where the Plaintiff Can Show a Nexus Between the Alleged Infringement and Defendants' Revenues. ............................ 3

    B. Assuming Defendants' use of the Sowers Photo was Unlicensed and not Fair Use, Summary Judgment Should Be Granted in Defendants' Favor On Plaintiff's Disgorgement Claim Because Plaintiff Cannot Meet Her Burden of Establishing a Nexus Between the Alleged Infringement and Defendants' Revenue. ............................................................................................................... 5

V. CONCLUSION .............................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 2

*Andreas v. Volkswagon of America, Inc.*, 336 F.3d 789 (8th Cir. 2003) .................. 3, 4, 10, 11, 12

*Assessment Techs. Inst., LLC v. Parkes*, No. 19-2514-JAR, 2022 WL 588889 (D. Kan. Feb. 25, 2022) ......................................................................................................................... 1

*Balsley v. LFP, Inc.,* 691 F.3d 747 (6th Cir. 2012) ........................................................................ 4

*Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514 (4th Cir. 2003) ...................... 4, 5

*Brittney Gobble Photography, LLC v. Sinclair Broadcast Grp., Inc.*, 2021 WL 5359671 (D. Md. 2021) ................................................................................................................... 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 3

*D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 516 F. Supp. 3d 121 (D.N.H. 2021) ................................................................................................................................. 4

*D'Pergo Custom Guitars, Inc.*, 516 F. Supp. 3d ......................................................................... 10

*Dash v. Mayweather*, 731 F.3d 303 (4th Cir. 2013) .............................................................. 3, 4, 5, 7

*Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) ........................................................ 8

*Enerplus Res. (USA) Corp. v. Wilkinson*, 801 F. App'x 448 (8th Cir. 2020) ................................ 3

*Estate of Vane v. The Fair, Inc.,* 849 F.2d 186 (5th Cir. 1988) ..................................................... 6

*Fair Isaac Corp. v. Fed. Ins. Co.*, 408 F. Supp. 3d 1019 (D. Minn. 2019), *aff'd*, 468 F. Supp. 3d 1110 (D. Minn. 2020) ......................................................................................... 1

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) .......................................................... 8

*Lower Brule Sioux Tribe v. South Dakota*, 104 F.3d 1017 (8th Cir. 1997) ................................... 2

*Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002) ............................................................... 5, 11, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..................................... 2

*Navarro v. Procter & Gamble Co.*, 529 F. Supp. 3d 742 (S.D. Ohio 2021) .................................. 1

*On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001) ........................................................... 6, 9

*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25, 2004), *opinion amended on denial of reh'g*, No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004) ...................................................... 5

*Royal Am. Mgrs., Inc. v. Int'l Surplus Lines Ins. Co.*, 760 F. Supp. 788 (W.D. Mo. 1991) ........... 2

*Structured Asset Sales, LLC v. Sheeran*, 2022 WL 4544479 (S.D.N.Y. Sept. 29, 2022) ............... 6

*Taylor v. Meirick,* 712 F.2d 1112 (7th Cir. 1983) .................................................... 10, 11

*Thomas v. Corwin*, 483 F.3d 516 (8th Cir. 2007) ....................................................... 2

*Univ. of Colo. Found. v. Am. Cyanamid Co.,* 196 F.3d 1366 (Fed. Cir. 1999) .............................. 6

**Statutes**

17 U.S.C. § 504(b) ................................................................................. 3, 4, 5, 9

**Other Authorities**

4 M. NIMMER, NIMMER ON COPYRIGHT, § 14.03 (2020) ................................................. 10

**Rules**

Fed. R. Civ. Prod. 56 ............................................................................... 2

Fed.R.Evid. 702 .................................................................................... 8

## I. INTRODUCTION

In this action alleging copyright infringement, Plaintiff seeks, among other damages, Defendants' profits she claims resulted from Defendants' alleged infringement of her photograph ("Sowers Photo"). (Complaint, Doc. # 1, ¶¶ 632, 643, 651).[1] However, after more than a year of extensive discovery (which is now closed), Plaintiff has still not specified the specific amount of revenues or profits she seeks, whether in her Complaint, in any Rule 26 Disclosure, or otherwise. Plaintiff's expert witness on profits, James Harrington, CPA, CFF, simply opines on Defendants' combined revenue from all advertising and subscriptions derived from all content on their websites. He makes no effort to attribute those revenues to the allegedly infringing photograph or explain how those revenues are the result of, or attributable to, Defendants' alleged infringement. Because Plaintiff has not and cannot meet her burden of establishing a non-speculative causal connection between Defendants' revenues and the alleged infringement, Defendants are entitled to summary judgment on Plaintiff's claim for disgorgement of profits as a matter of law.

## II. STATEMENT OF UNCONTROVERTED MATERIAL FACTS

In addition to those facts submitted in the Statement of Uncontroverted Facts filed with respect to the other Motions filed this date, Defendants submit the following additional materials as support for this Motion: the Redacted Preliminary Report of James Harrington[2] (Exhibit O),

---

[1] Though the matter will be pertinent only if the Court denies the present motion, Plaintiff's request for disgorgement of profits is equitable in nature and not subject to jury determination. *See Fair Isaac Corp. v. Fed. Ins. Co.*, 408 F. Supp. 3d 1019, 1033 (D. Minn. 2019), *aff'd*, 468 F. Supp. 3d 1110 (D. Minn. 2020); *see also Navarro v. Procter & Gamble Co.*, 529 F. Supp. 3d 742, 749 (S.D. Ohio 2021) (no statutory or Seventh Amendment right to a jury trial on issue of profits-based damages for infringement under the Copyright Act.); *Assessment Techs. Inst., LLC v. Parkes*, No. 19-2514-JAR, 2022 WL 588889, at *3 (D. Kan. Feb. 25, 2022) (same).

[2] Portions of the Harrington Preliminary Report dealing only with immaterial opinions regarding Plaintiff's actual damages have been redacted in light of an Attorneys' Eyes Only restriction imposed by Plaintiff under the Protective Order (Doc. #: 46). While Defendants dispute the justification for that restriction, they make no issue of it now as it is immaterial to this Motion.

the Supplemental Report of James Harrington (Exhibit P), and material portions of Mr. Harrington's deposition (Exhibit Q).

### III. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the moving party demonstrates that the material facts in the case cannot be disputed, and the movant is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-90 (1986). In response, the non-moving party must do more than put forth "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). The Court must view the facts and evidence in the light most favorable to the non-moving party. *Id.* at 526. A genuine dispute of material facts only exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal Am. Mgrs., Inc. v. Int'l Surplus Lines Ins. Co.*, 760 F. Supp. 788, 790 (W.D. Mo. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A disputed fact is not material unless it is "outcome determinative." *Lower Brule Sioux Tribe v. South Dakota*, 104 F.3d 1017, 1021 (8th Cir. 1997).

Summary judgment is also appropriate where, following the close of discovery, the plaintiff fails to produce admissible evidence in support of one or more elements of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *Enerplus Res. (USA) Corp. v. Wilkinson*, 801 F. App'x 448, 451 (8th Cir. 2020).

## IV. ARGUMENT

### A. Profits Are Recoverable Only Where the Plaintiff Can Show a Nexus Between the Alleged Infringement and Defendants' Revenues.

Under Section 504(b) of the Copyright Act, a copyright holder is entitled to recover actual damages as well as "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b); *Andreas v. Volkswagon of America, Inc.*, 336 F.3d 789, 795 (8th Cir. 2003). Section 504(b)'s underlying principle is that "when 'the infringement occurs as a small part of a much larger work, the fact finder properly focuses not on the profit of the work overall, but only on the profit that the infringement contributes.'" *Dash v. Mayweather*, 731 F.3d 303, 326 (4th Cir. 2013) (citation omitted).

To meet this statutory burden, a copyright owner has an "affirmative duty" to prove both: "(1) the amount of the claimed revenue streams, and (2) that there is some reasonable relationship 'between the infringement and th[ose] particular profit stream[s].'" *Id.* at 329-30 (alteration in original) (citation omitted); *see also Andreas*, 336 F.3d at 796 (plaintiff has the burden of showing a "nexus" between the infringement and the revenue). As such, a plaintiff must present admissible, non-speculative evidence showing a "causal link" between the infringement and revenue. *Dash*, 731 F.3d at 330 (citing *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522-23 (4th Cir. 2003)); *see also Balsley v. LFP, Inc.,* 691 F.3d 747, 767-68 (6th Cir. 2012) (the copyright owner must identify the portion of an infringer's gross revenues that bears a "reasonable relationship" to the alleged infringement); *D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 516 F. Supp. 3d 121, 126 (D.N.H. 2021) ("The First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Federal Circuits have all concluded, in some form, that a copyright owner must show a causal relationship between the infringement and the gross revenue figure

3

presented."). If and only if the plaintiff can establish this connection, the burden shifts to the defendant to prove deductible expenses and/or show that certain revenues were attributable to factors other than the alleged infringement. 17 U.S.C. § 504(b).

Summary judgment on the issue of profit damages is appropriate where, as here, a plaintiff alleging infringement cannot meet her initial burden. *Dash,* 731 F.3d at 330-33 (granting summary judgment because there was "no conceivable connection"—let alone a causal link—between the alleged infringement (*i.e.*, the playing of a song as introductory music for boxer Floyd Mayweather at pay-per-view professional wrestling events) and the profits claimed by the song's writer (*i.e.*, a portion of the net profits from the wrestling events)); *see also Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Oct. 25, 2004), *opinion amended on denial of reh'g*, No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004) ("§ 504(b) creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement."); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 524 (4th Cir. 2003); *Mackie v. Rieser*, 296 F.3d 909, 915-16 (9th Cir. 2002) (rejecting artist's claim for profits from symphony's infringement of artist's copyright through unauthorized use of sculpture in advertising brochures and holding that "to survive summary judgment on a demand for indirect profits pursuant to § 504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement."); *Univ. of Colo. Found. v. Am. Cyanamid Co.,* 196 F.3d 1366, 1375 (Fed. Cir. 1999) (holding the plaintiff has the "burden" to demonstrate a nexus between the infringement and revenues before apportionment can occur); *Estate of Vane v. The Fair,*

*Inc.,* 849 F.2d 186, 189-90 (5th Cir. 1988) (affirming district court's refusal to award profits damages allegedly resulting from infringing use of photographic slides in advertising); *Structured Asset Sales, LLC v. Sheeran*, 2022 WL 4544479, at *7 (S.D.N.Y. Sept. 29, 2022) ("Without a showing of 'any causal connection between the infringement and the defendant's profits,' it is only speculative whether the revenue is reasonably related to the infringement.") (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001)); *Brittney Gobble Photography, LLC v. Sinclair Broadcast Grp., Inc.*, 2021 WL 5359671, at *25 (D. Md. 2021) (summary judgment on profits claim granted because "Plaintiff has not even attempted to identify an amount of revenue to which it claims it is entitled (aside from presumably claiming all of it.)").

**B. Assuming Defendants' use of the Sowers Photo was Unlicensed and not Fair Use, Summary Judgment Should Be Granted in Defendants' Favor On Plaintiff's Disgorgement Claim Because Plaintiff Cannot Meet Her Burden of Establishing a Nexus Between the Alleged Infringement and Defendants' Revenue.**

While Plaintiff has retained an expert who, in a Supplemental Report dated December 9, 2022 (well after the expert report disclosure date in the Amended Scheduling Order, Doc. #: 49), opines that during the period the Sowers Photo appeared on the Defendants' websites, Gannett had digital advertising revenue of between $7.449 to $10.641 million, and new digital subscriber revenue of $760,000, Mr. Harrington never explains how those revenues are the result of, or attributable to, Defendants' alleged infringement. (Harrington Supp. Report at 5-6 – Exhibit P). All he does is take Defendants' combined revenue from all advertising derived from all content on their websites. He makes no effort to attribute those revenues to the allegedly infringing photograph. *Id.*

In Mr. Harrington's deposition, he admitted to having "no information whatsoever that [the Sowers Photo] was used as inducement for any advertiser to commission any advertising." (Harrington Dep. at 51:4-9 – Exhibit Q). Moreover, he admitted he was not suggesting that but

5

for the use of the Sowers Photo, revenue would not have been received. (*Id*. at 52:23-53:2). While acknowledging that his "burden as the plaintiff expert is to ***identify the revenues that are associated with the infringement***," (*Id.* at 65:9-11) (emphasis added), he claimed it was enough for him to show that "defendants have advertising revenues that were earned from the advertisers that are placing ads on the page that contains the copyrighted photograph." (*Id.* at 53:3-8). After determining that Defendants had total advertising revenue of a certain amount, he concluded that "[t]he defendants' burden is to identify the costs that are properly deducted from those [ ] accused revenues … [and] to identify the revenues that are not properly attributed to that use." (Harrington Dep. at 65:9-22 – Exhibit Q).

Nothing in Mr. Harrington's original report or supplemental report comes close to meeting Plaintiff's threshold burden of identifying a "reasonable relationship" between the alleged infringement and any particular profit streams.³ *Dash*, 731 F.3d at 326. All he does is state the obvious – that Defendants, like most media websites, derive revenue from content on their websites. But beyond identifying how much revenue the websites derive, Mr. Harrington never identifies how that revenue results from, or is "attributed to" a single allegedly infringing photograph included among thousands of other photographs, news articles, videos and other content on Defendants' websites. The *coup de grâce* on this issue is Mr. Harrington's testimony

---

³ Though Defendants do not dispute that Mr. Harrington is a qualified forensic CPA, the relevance and reliability of his testimony is highly suspect given that all he does is present staggering revenue figures without in any way tying those figures to the facts or applicable legal criteria – *i.e.*, demonstrating how those figures are attributable to the alleged infringement. As such, if this Motion (and other Motions filed this date) are not granted, and this matter proceeds to trial, his testimony has a great potential to mislead and confuse rather than enlighten, is not reliably applied to the facts of the case, and is so fundamentally unreliable that it can offer no reasonable assistance to the jury. For that reason, even if this Motion fails, Mr. Harrington's testimony is subject to exclusion under Fed.R.Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

6

that he merely "assumed" the existence of "a causal connection between the alleged infringement and any revenues that were derived." (Harrington Dep. at 72:17-73:3 – Exhibit Q).

It is undisputed that Defendants displayed the Sowers Photo in news articles about the Ad Meter program. (SUMF ¶ 30). It is further undisputed that the Sowers Photo was obtained by taking a screenshot from the BTO Ad submitted by Microsoft for inclusion in Ad Meter. (SUMF ¶ 35). Many of the webpages that displayed the Sowers Photo also included screenshots from 61 other Super Bowl commercials. (SUMF ¶ 49 – Exhibit N). Moreover, the Sowers Photo displayed on Defendants' websites was just one of thousands of photographs, news articles, videos, and other content that appear every single day on those websites with accompanying advertisements from which Defendants derive revenue.

As Defendants have made clear from the inception of this case, they do not compile and have no means to ascertain revenue from a single item of content published on their websites. (30(b)(6) Resp. No. 13; Doc. #: 76 – "Revenue is not tracked based on any particular content within any of the subject websites and revenue cannot be associated or attributed to any particular content within any of the subject websites."). And it would be unrealistic to expect Defendants would track revenues from something as incidental as a single photograph mixed in with thousands of other items of content in their publications. Though Plaintiff may not like this fact, it does not rid her of her burden to establish a "reasonable relationship" between the alleged infringement and revenues, nor does it make permissible her attempt to prove Defendants' profits by merely pointing to total digital ad and subscriber revenues for all content on Defendants' websites.[4]

---

[4] If there was infringement, the granting the relief requested in this Motion would not deprive Plaintiff of the other remedies available for infringement, including any actual losses she can prove.

As is made clear from both the circumstances and Mr. Harrington's testimony, what Plaintiff seeks to do is to present Defendants' total ad and subscriber revenue as evidence of recoverable profits. She seeks to do this under a grossly mistaken assumption that the Copyright Act (namely, its provision placing a burden on an alleged infringer to apportion revenues that are not attributable to the infringement) considers this sufficient evidence to support her claim to recover profits and to shift the burden to Defendants to apportion those revenues not attributable to the alleged infringement. But under the ample precedent cited above, she is wrong. *See, e.g., On Davis*, 246 F.3d at 160 (rejecting evidence of increased gross revenues following an alleged infringement, stating "It is true that a highly literal interpretation of the statute would favor Davis. It says that 'the copyright owner is required to present proof only of the infringer's gross revenue,' 17 U.S.C. § 504(b), leaving it to the infringer to prove what portions of its revenue are not attributable to the infringement. Nonetheless we think the term 'gross revenue' under the statute means gross revenue reasonably related to the infringement, not unrelated revenues."); *D'Pergo Custom Guitars, Inc.*, 516 F. Supp. 3d at 125-26 (rejecting a similar notion by a copyright plaintiff that "it need only present evidence of [the alleged infringer's] gross revenues, which triggers a rebuttable presumption that all of those gross revenues are entirely attributable to the infringement," and noting that there must be a "causal relationship."); *see also* 4 M. NIMMER, NIMMER ON COPYRIGHT, § 14.03[B][2][a], at 14-51 (2020) ("When an infringer's profits are only remotely and speculatively attributable to the infringement, courts deny recovery to the copyright owner.").

Because Plaintiff cannot show a non-speculative "causal connection" between the alleged infringement and the millions of dollars in gross revenues identified by Plaintiff's expert, Plaintiff cannot present a *prima facie* case for disgorgement of profits, and the burden thus never shifts to

8

Case 4:21-cv-00557-RK    Document 91    Filed 01/06/23    Page 12 of 17

Defendants to reduce those revenues with their deductible costs or to show that revenues were attributable to other things. Simply, Plaintiff cannot present any evidence beyond rank speculation that those millions of dollars in revenues are attributable to display of the Sowers Photo – one of thousands of items Defendants published on their websites in a given day.

In fact, a decision cited with approval by the Eighth Circuit in *Andreas* shows Plaintiff's error. In *Taylor v. Meirick,* 712 F.2d 1112, 1122 (7th Cir. 1983) (cited in *Andreas,* 336 F.3d. at 796), the Seventh Circuit held that a plaintiff could not meet its burden of establishing defendant's gross revenue attributable to infringement by showing gross revenues from everything defendant sold, but must show revenues from the sale of the infringing product. By way of analogy, the court said: "If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits." *Id.* at 1122. In other words, as the Eighth Circuit held in *Andreas*, "It is not enough to show an infringement and then seek all of the defendant's profits, from whatever source." 336 F.3d at 799. But that is all Plaintiff tries to do here.

Another illustrative case cited approvingly by the Eighth Circuit in *Andreas*, and remarkably similar to the facts here, is the Ninth Circuit's decision in *Mackie v. Rieser.* In *Mackie*, the Seattle Symphony used a photograph of the plaintiff's copyrighted sculpture in a brochure with other photographs and artwork as part of a subscription campaign. 296 F.3d at 912. The brochure was sent to over 150,000 potential subscribers. *Id.* The symphony moved for summary judgment on the disgorgement of profits issue, claiming the artist failed to establish a direct link between the infringing use and the symphony's revenues. *Id* at 913. Both the district court and appellate court agreed that summary judgment was appropriate on the disgorgement of profits claim. *Id.* at 915-16 ("to survive summary judgment on a demand for indirect profits pursuant to § 504(b), a

9

copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement.").

Finally, *Andreas* is instructive on the type of evidence Plaintiff would need to advance her lost profits claim—evidence she has not and cannot present here. In *Andreas*, Volkswagen of America created a television commercial that used the plaintiff's copyrighted expression to promote the sale of its Audi TT Coupe automobile. *Andreas*, 336 F.3d at 791-92. The plaintiff sought to recover profits from the sale of the TT coupe and all other Audi models. *Id* at 792. The district court excluded evidence related to earnings from other models, *id.*, but after allowing evidence of TT coupe sales it at trial, resulting in a verdict for the plaintiff, set the verdict aside finding that was too speculative. *Id.* at 795. The Eighth Circuit reversed, stating:

> Andreas introduced more than mere speculation that the Wake Up commercial contributed to sales of the TT coupe. The infringement was the centerpiece of a commercial that essentially showed nothing but the TT coupe. The evidence established that Audi enthusiastically presented the commercial to its dealers as an important and integral part of its launch of the TT coupe into the U.S. market; sales of the TT coupe during the period that the commercial aired were above Audi's projections; the three commercials received high ratings on the Allison–Fischer surveys that rated consumer recall of the commercials; and Audi paid M & S a substantial bonus based on the success of the commercials. Reading this evidence in the light most favorable to the verdict, the commercial did more than merely "contribute[ ] somehow," *id.,* to sales of the TT coupe.

*Id.* at 796-97. This evidence, the court said, was sufficient to show the requisite nexus to support a verdict for disgorgement of a portion of Volkswagen's revenues related to a portion of the sales of the TT coupe, but not for other vehicles. *Id.*at 797, 799.

Here, Plaintiff has no similar evidence of revenues even remotely attributable to the Sowers Photo. Unlike *Andreas* where the infringed work was the centerpiece of an advertising campaign specifically targeted to enhancing the sales of the TT coupe, there is no evidence that the Sowers Photo was ever displayed on any of the Defendants' home pages or in Defendants' advertising.

10

Nor is there any evidence that the news articles that included the Sowers Photo used the inclusion of the photo to attract visitors to their sites or to attract or otherwise negotiate with advertisers. Similarly, there is no evidence that Defendants' ad revenues increased during the time when the Sowers Photo was on the websites, much less that any increase was because of the photo, and there is no evidence that advertisers purchased any more advertisements because of the photo or requested their ads be placed adjacent to the photo. Despite the existence of a "subscribe now" button link on the top of each website (a customary component of news media websites visited by non-subscribers – *see, e.g., https://www.kansascity.com/*), the Sowers Photo was not used to entice subscriptions any more than any other content on Defendants' web pages. While Mr. Harrington opines based on Gannett's 10-K that digital subscribership increased in 2020, there is no evidence that more persons subscribed **because** of the photo as opposed to market trends, Defendants' prize-winning journalism, or any other factor.[5] *See, e.g., Mackie*, 296 F.3d at 916 ("[W]e can surmise virtually endless permutations to account for an individual's decision to subscribe to the [Symphony's services], reasons that have nothing to do with the artwork in question. For example, was it because of the Symphony's reputation, or the conductor, or a specific musician, or the dates of the concerts, or the new symphony hall, or the program, or the featured composers, or community boosterism, or simply a love of music, or ... ?") But this is what Plaintiff would have to show to present a nexus sufficient to proceed on her lost profits claim. She cannot do so.

---

[5] Even if Plaintiff could proceed merely on the basis of the combined revenues shown in its annual statement, Gannett suffered a net loss in its publishing segment in 2020. (Harrington Dep. at 62:22–65:7 – Exhibit Q).

11

Case 4:21-cv-00557-RK   Document 91   Filed 01/06/23   Page 15 of 17

## V. CONCLUSION

With discovery closed, Plaintiff has no evidence or testimony regarding revenue other than from an expert who does nothing more than state the total ad and subscription revenues obtained by Defendants' websites over a particular period of time. Beyond that, Plaintiff can present nothing but speculation (or seek speculation by the factfinder) as to how Defendants' display of the Sowers Photo on Defendants' websites corresponded to Defendants' total advertisement and subscriber revenues. That is insufficient to meet her burden. Accordingly, this Court should enter summary judgment for Defendants on Plaintiff's claim for disgorgements of profits.

Respectfully submitted,

**LEWIS RICE LLC,**

By:*/s/ Joseph E. Martineau*
Joseph E. Martineau, #32397MO
Lindsey M. Bruno, #73055MO
600 Washington Avenue, Suite 2500
St. Louis, MO 63101-1311
Tel: 314.444.7729; Fax: 314.612.7729
jmartineau@lewisrice.com
lbruno@lewisrice.com

Scott A. Wissel
1010 Walnut, Suite 500
Kansas City, MO 64106
Telephone: 816.472.2568
Fax: 816.472.2500

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 6th day of January, 2023, a true copy hereof was served upon the following counsel of record, via e-mail, and that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

Arthur K. Shaffer
McDowell, Rice, Smith & Buchanan, P.C.
605 W. 47th St., Suite 350
Kansas City, MO 64112
Telephone: (816) 753-5400
Facsimile: (816) 753-9996
ashaffer@mcdowellrice.com

***Attorneys for the Plaintiff***

By: */s/ Joseph E. Martineau*