# SUMF
# Exhibit O – Prelim. Rep. of Harrington

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **STEPHANIE CAMPBELL** | § | |
| | § | |
| Plaintiff, | § | Case No. 4 :21-CV-00557-RK |
| | § | |
| **v.** | § | |
| | § | |
| **GANNETT COMPANY, INC. et.al.** | § | |
| | § | |
| Defendants. | § | |

---

**Expert Report On Damages**

**Of**

**James Harrington, CPA, CFF**


**September 8, 2022**





**SUMF Ex. O -**

**(Prelim. Rep. of Harrington)**

Confidential – Subject To Protective Order

## Table of Contents

INTRODUCTION ...................................................................................................................3

SCOPE OF WORK ...............................................................................................................4

INFORMATION CONSIDERED ..........................................................................................4

BACKGROUND – STEPHANIE CAMPBELL ....................................................................5

BACKGROUND – DEFENDANTS .......................................................................................7

ASSUMED LIABILITY .....................................................................................................10

DAMAGES OVERVIEW AND SUMMARY .....................................................................11

ACTUAL DAMAGES..........................................................................................................12

DEFENDANTS' PROFITS ..................................................................................................14

STATUTORY DAMAGES...................................................................................................19

### ATTACHMENTS AND ATTACHMENTS

| | |
|---|---|
| ATTACHMENT A | Resume and Testimony Listing |
| ATTACHMENT B | Documents and Information Considered |
| | |
| ATTACHMENT 100 | Summary of Potential Damages Under Statute |
| ATTACHMENTS 200-201 | Gannett On-Line Advertising Revenue |
| ATTACHMENT 300 | Gannett Consolidated Revenue by Source |
| ATTACHMENT 301 | Gannett Reported Revenue by Category and Segment |
| ATTACHMENTS 310-312 | Gannett Company Operating Results |
| ATTACHMENT 400 | Licensing and Settlement Agreements |

Confidential – Subject To Protective Order

# INTRODUCTION

1. I am a Director with Matson, Driscoll & Damico LLP ("MDD") and a Certified Public Accountant. I have been providing forensic accounting services for over twenty years and am experienced in damages, financial, and accounting matters relevant to the scope of my work in this matter. I have consulted on numerous intellectual property and commercial damages matters. I have analyzed and prepared claims related to lost profits, reasonable royalties, disgorgement of profits and other economic impacts including those issues under study in this Report.

2. My curriculum vitae is provided as ATTACHMENT A to this report which describes more fully my education, training, industry experience, and testimony experience.

3. Our fees on this assignment are based upon hourly rates for myself and other professionals working under my supervision. My current hourly rate for work in this matter, including deposition and trial testimony, is $310 per hour. The hourly rates for professional staff working under my direction range from $165 to $370 per hour. Our fees are not contingent on the outcome of this matter.

4. MDD is a global forensic accounting firm specializing in economic damage quantification calculations. MDD has approximately 300 forensic accounting professionals in over 40 offices worldwide.

Confidential – Subject To Protective Order

## SCOPE OF WORK

5. I was retained by counsel for Stephanie Campbell to analyze damages issues in the <u>Stephanie Campbell v. Gannett Company, Inc. et.al.</u> matter. I may be asked to address other issues raised by the defendants' expert, or other issues, as directed by counsel for the plaintiff.

6. I understand that discovery is ongoing, and plaintiff's counsel has a document request pending for additional detailed revenue data and information and relevant depositions are still pending. Should the defendants provide additional data and/or information relevant to my analysis, I expect to update this Report accordingly.

## INFORMATION CONSIDERED

7. ATTACHMENT B lists the various documents, data and information considered in forming the opinions outlined in this Report.

8. I understand this Report may be supplemented by deposition and/or trial testimony. Pages of the documents, data, and information considered may be used as exhibits to support my opinions.

9. I may prepare exhibits to be used at trial to graphically illustrate my analysis and opinions based on the documents, data and information considered.

10. To the extent made available to me as of the date of this Report, I have relied on historical financial information and business records relating to the parties in this matter. Any conclusions are dependent on such information being accurate and current in all material respects.

4

Confidential – Subject To Protective Order

11. The ATTACHMENTS are part of this Report whether or not discussed directly in the text of this Report.

## BACKGROUND – STEPHANIE CAMPBELL

12. The plaintiff in this matter is Stephanie Campbell ("Ms. Campbell"). Ms. Campbell is a professional photographer and a former professional football player.[1] Ms. Campbell played football for various teams including the Kansas City team of the Women's Football Association ("WFA").[2]

13. While playing in the WFA, Ms. Campbell was teammates with another WFA player, Katie Sowers ("Ms. Sowers"). Upon retiring from the WFA, Ms. Sowers sought to obtain a coaching position in the NFL. In 2019, Ms. Sowers became a full time coaching assistant with the San Francisco 49ers and became widely known for being the second full-time female coach in the NFL and its first openly gay coach.[3]

14. As a professional photographer and a former teammate of Ms. Sowers, Ms. Campbell was able to gain access to photograph Ms. Sowers on multiple occasions including shots of Ms. Sowers actively coaching on the 49ers' sidelines.

---

[1] Complaint, p.6.
[2] Complaint, p. 6.
[3] Wikipedia ("Katie Sowers") and Complaint, p. 6.

Confidential – Subject To Protective Order

### A. Ms. Campbell's Copyright

15. The copyright at issue in this matter covers a specific photograph of Ms. Sowers taken by Ms. Campbell (the "Sowers Photograph").[4]  The Sowers Photograph is shown below:



16. The plaintiff alleges the defendants have infringed on her copyright by improperly using the Sowers Photograph on various websites owned by the defendants.

17. I understand the period of infringement began on January 29, 2020, when the Sowers Photograph first appeared on the defendants' websites until January 20, 2021, when the defendants received notice from the plaintiff.[5]

---

[4] Registered with the US Copyright Office, Reg. No. VA 2-073-437.
[5] See, for example, Defendant Gannett Co., Inc.'s Objections And Answers To Plaintiff's First Set Of Interrogatories, p. 8.



Confidential – Subject To Protective Order

## BACKGROUND – DEFENDANTS

18. The defendants in this matter include Gannett Company, Inc. and sixteen Gannett owned media publishing companies located throughout the U.S.[6] The following lists the named defendants in the matter:

- Gannett Company, Inc.

- USA Today Sports Media Group (d/b/a USA Today)

- The News Journal Media Group (d/b/a Delaware Journal)

- The Courier-Journal, Inc. (d/b/a Courier Journal)

- The Arizona Republic (d/b/a AZCentrral)

- Gannett Vermont Publishing, Inc. (d/b/a Burlington Free Press)

- Gannett River States Publishing Corp. (d/b/a The Clarion-Ledger)

- Memphis Publishing Company (d/b/a The Commercial Appeal)

- The Courier-Journal, Inc. (d/b/a Florida Today)

- Gatehouse Media Ohio Holdings II, Inc. (d/b/a The Columbus Dispatch)

- Des Moines Register and Tribune Company (d/b/a Des Moines Register)

- The Providence Journal Company (d/b/a Providence Journal)

- Argus Leader Media (d/b/a Argus)

- Asbury Park Press, Inc. (d/b/a APP.com)

---

[6] I understand that additional Gannett owned entities might be added as defendants subsequent to the issuance of this Report. I also understand that Gannett contends that two of the listed Gannett Defendants are duplicates of others and the number of defendants is fifteen. For the purposes of this Report, I have assumed the current number of defendants to be seventeen. Once this discrepancy is resolved I will update my calculations accordingly.



Confidential – Subject To Protective Order

- Gatehouse Media, LLC (d/b/a The Florida Times-Union)

- Visalia Newspapers LLC (d/b/a Visalia Times – Delta)

- Journal Sentinel, Inc. (d/b/a Milwaukee Journal Sentinel)

19. Throughout this Report I refer to the defendants collectively as the "Gannett Defendants."

### A. Gannett Company, Inc.

20. Gannett Company, Inc. ("Gannett") is a publicly traded media and marketing solutions company and the parent company of the remaining Gannett Defendants.

21. Gannett is the leading news media publisher in the U.S. in terms of circulation and has the fifth largest digital audience in the News and Information category as of December 2020 according to Comscore Media Metrics.[7]

22. Gannett reports its operating results in two segments: 1) Publishing Segment, and 2) Digital Marketing Solutions Segment. The following sections provide a brief overview of each segment and generally describes the types of revenues generated by each.[8]

### i. Publishing Segment

23. The Publishing Segment reports operating results for 253 daily and 308 weekly media/publishing organizations including the named defendants in this matter. Along with the daily and weekly publications, Gannett's Publishing Segment includes a network of 375 websites affiliated with the previously mentioned media/publishing organizations. Gannett states that the website network averaged 150 million unique visitors per month in 2020. The

---

[7] Gannett Company, Inc. Annual Report 2020 (GANNETT_CAMPBELL_000031-157).
[8] Unless otherwise noted, the following segment discussions are taken from the Gannett Company, Inc. Annual Report 2020 (GANNETT_CAMPBELL_000031-157).

8



Confidential – Subject To Protective Order

visitors access content on the network of websites through desktops, laptops, smartphones, and tablets.

24. The Publishing Segment generates revenue primarily through print and on-line ad sales and subscriptions from its digital (website) and print publications.

ii. **Digital Marketing Services Segment**

25. The Digital Marketing Services Segment ("DMS") assists local businesses to identify and obtain customers by providing assistance in building an on-line presence, advertising, and other research and analytical services to drive customer awareness.

26. DMS generates revenues through advertising and marketing services provided to its local business customers.

**B. Gannett's Internal Copyright Guide**

27. In 2016, Gannett prepared an internal copyright guide in which it provided an overview of copyrights and the protections provided owners.[9] The guide also describes the required care and investigation to be followed by Gannett employees seeking to use copyrighted or potentially copyrighted content.

28. The introduction paragraph in the guide notes that "[u]nder federal law, the only person who is permitted to copy a photo…without permission is the person who originally created it. If a copy is made by someone else without permission, the creator can sue for copyright infringement."[10]

---

[9] Gannett Copyright Guide dated September 2016 (GANNETT_CAMPBELL_000269 – 297).
[10] Gannett Copyright Guide dated September 2016 (GANNETT_CAMPBELL_000269 – 297 at GANNETT_CAMPBELL_000272).



Confidential – Subject To Protective Order

29. The guide provides Gannett employees with protocols regarding the use of content that might be copyright protected materials. The guide highlights the importance of obtaining permission from the owners of copyright protected content prior to use by Gannett. By way of example, the guide specifically states:

- "***Almost every photo is protected by copyright***"[11]

- "To avoid copyright problems, use photos…that you already have the right to use. When in doubt, ask for permission from the copyright owner."[12]

- If permission cannot be obtained "**Do not use!**"[13]

30. The guide specifically states that "[w]e want to be extremely cautious if a photo looks like it was taken by a professional photographer."[14] As noted earlier in this Report, the plaintiff in this matter, Ms. Campbell, is a professional photographer.

## ASSUMED LIABILITY

31. My analysis assumes that the plaintiff will prevail on her legal claims and be entitled to its damages. I have no opinions on legal issues including the liability issues in this matter. My opinions are directed to the damages issues outlined in this Report. All references to accused

---

[11] Gannett Copyright Guide dated September 2016 (GANNETT_CAMPBELL_000269 – 297 at GANNETT_CAMPBELL_000272) (emphasis in original).
[12] Gannett Copyright Guide dated September 2016 (GANNETT_CAMPBELL_000269 – 297 at GANNETT_CAMPBELL_000272).
[13] Gannett Copyright Guide dated September 2016 (GANNETT_CAMPBELL_000269 – 297 at GANNETT_CAMPBELL_000274) (emphasis in original).
[14] Gannett Copyright Guide dated September 2016 (GANNETT_CAMPBELL_000269 – 297 at GANNETT_CAMPBELL_000285).



Confidential – Subject To Protective Order

sales, infringement, or the like, are simply necessary assumptions in a damages study that the party will prevail on some or all its legal claims and be entitled to damages.

## DAMAGES OVERVIEW AND SUMMARY

32. As noted above, Ms. Campbell has alleged the Gannett Defendants have infringed her copyright related to the Sowers Photograph.

33. I understand the relevant statutory authority for copyright infringement damages is 17 U.S.C. § 504 of the U.S. Code ("The Code").

34. The Code states the infringer is liable for either the copyright owner's actual damages and any additional profits of the infringer:

> *"The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."*

35. Or, in the alternative, The Code allows the copyright owner to seek an award of statutory damages:

> *"[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work."*

11

Confidential – Subject To Protective Order

36. Notably, The Code allows the court to increase the statutory amount to $150,000 upon a showing of willfulness by the accused infringer.

37. For the purposes of this Report, I have been asked to address Ms. Campbell's damages in the form of her actual damages, the Defendants' profits, and under the statutory framework. The following sections discuss my analysis and findings under each remedy.

ACTUAL DAMAGES

38. I understand that, in the context of copyright damages, "actual damages" are based on the market value the copyrighted work that has been infringed.[15] Further, "market value" represents "what a willing buyer would have been reasonably required to pay a willing seller for the plaintiff's work."[16] In my opinion, Ms. Campbell's licensing history on the Sowers Photograph provides a reasonable basis in determining a market value for the copyrighted work.

39. ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████

---

[15] Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc., 772 F.2d 505, 512 (9th Cir.1985).
[16] Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc., 772 F.2d 505, 512 (9th Cir.1985).



Confidential – Subject To Protective Order

### A. License Agreements

40. ██████████████████████████████████████████████████

██████████████████ ██████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

### B. Settlement Agreements

41. ██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████

### C. Market Value Conclusion

42. ██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████

---

[17] It was under this license that Microsoft used the photo in its "Be The One" Super Bowl commercial.
[18] See ATTACHMENT 400.



Confidential – Subject To Protective Order

43. ███████████████████████████████████████████

███████████████████████████████████████████

██████████

| Calculation Of Ms. Campbell's Actual Damages | |
| --- | --- |
| Currently Accused Infringers | 17 |
| Market Value License Fee | $ ████ |
| Total Actual Damages | $ ████ |

DEFENDANTS' PROFITS

44. As noted above, under The Code, in seeking the infringer's profit in a copyright matter, the copyright owner is required to only present proof of the infringer's gross revenue. As previously mentioned, the Gannett Defendants have not provided information previously requested and discovery is still pending which may yet provide additional information related to the infringing revenues earned by the Gannett Defendants.

45. I understand the infringing use of the Sowers Photograph was limited to on-line use by the Defendants. As such, a study of recoverable revenue would necessarily focus on advertising revenues earned by the Gannett Defendants associated with the Publishing Segment including any ads placed on any webpages containing the copyrighted photograph and for any other revenue which can be allocated to the use of the photograph.

14

Confidential – Subject To Protective Order

46. As of the date of this Report, the Gannett Defendants have not produced data that would allow for the analysis and quantification of the gross advertising revenues that are attributable to the infringement. I reserve the right to update this Report upon receiving necessary data from the Gannett Defendants.

47. For the purposes of this Report, I rely on data and information disclosed by Gannett in its public filings (annual reports and Form 10-Ks) to estimate the total on-line ad revenue earned by the Gannett Defendants.[19]  The following sections discuss my analysis to date and the total Gannett revenue attributable to on-line advertising.

### A.  Consolidated Revenues

48. Gannett records revenues in three general categories: Advertising & Marketing Services, Circulation, and Other.

49.  Gannett's Advertising & Marketing Services revenue includes print advertising revenues from print ads placed in its national and local publications as well as digital advertising revenues from ads appearing on websites of its affiliated national and local publications.

50. Gannett's Circulation revenues are from print and digital subscriptions of its national and local publications as well as from single copy sales through retailers and vending racks/boxes.

---

[19] I recognize that the total on-line advertising revenues disclosed in Gannett's public filings includes advertising revenues not attributable to the infringing activities. I present the revenue analysis in this Report with the understanding that the totals presented would represent the starting point in an analysis of revenues attributable to the infringement. The analysis will be continued to quantify the relevant advertising revenues upon receiving the necessary data and information from the Gannett Defendants.

Confidential – Subject To Protective Order

51. Gannett's Other revenues are related to commercial printing services provided to third parties needing printing services.

52. The following Chart provides a summary of Gannett's revenues by category for 2020 and 2021 as disclosed in its public filings:

| Gannett Consolidated Revenue By Category ($ in Thousands) | | | | |
|---|---|---|---|---|
| | **2020** | | **2021** | |
| Advertising & Marketing Services | $ | 1,710,244 | $ | 1,651,161 |
| Circulation | | 1,391,996 | | 1,249,674 |
| Other | | 303,430 | | 307,248 |
| Total Consolidated Revenue | $ | 3,405,670 | $ | 3,208,083 |

### B. On-Line Advertising Revenues

53. As noted, the plaintiff has accused the Gannett Defendants of infringing the asserted copyright by improperly using the Sower Photograph on numerous affiliated websites. As such, the recoverable revenue analysis would initially focus on the Gannett Defendants' on-line advertising revenue generated from third-party ads placed on the Gannett Defendant's websites.

54. In its public filings, Gannett refers to on-line advertising as "digital" advertising. For the remaining sections of this Report, I adopt the same "digital" descriptor when referring to on-line advertising.

55. Gannett's public filings provide some insight as to the various revenue categories providing a reasonable basis to assume that certain revenues are generated by digital advertising.

Confidential – Subject To Protective Order

Within the Publishing segment, Gannett reports its digital advertising revenue in three main categories:[20]

- Digital Media – includes revenues from ads delivered on the Gannett network websites or via Gannett's off-network partner sites (e.g., Facebook or Apple News)

- Digital Classified – includes revenues from ads associated with Gannett classified ad partners (e.g., Cars.com, Ziprecruiter, or Homes.com), and

- Digital Marketing Services – includes revenues from advertising and marketing services provided to local businesses looking to expand their name recognition and customer base.

56. Based on the high level descriptions contained in the Gannett public filings, I have assumed that the Digital Media category includes the Publishing Segment digital advertising revenues that would properly be considered in determining the Gannett Defendants' profits in this matter. As indicated on ATTACHMENT 201, Gannett's Digital Media revenues totaled approximately $341.3 million in 2020 and $361.3 million in 2021.

57. Gannett also records some level of digital advertising revenue in its DMS Segment. According to Gannett, "[d]igital advertising and marketing revenues are generated primarily by online marketing products provided by our DMS segment."[21] The public filings do not provide a detailed breakdown of advertising versus marketing revenues included in the DMS

[20] Gannett Company, Inc. Annual Report 2020 (GANNETT_CAMPBELL_000031-157 at GANNETT_CAMPBELL_000039-40).
[21] Gannett Company, Inc. Annual Report 2020 (GANNETT_CAMPBELL_000031-157 at GANNETT_CAMPBELL_000093).



Confidential – Subject To Protective Order

segment. The public filings also do not provide a detailed breakdown for each of the Gannett Defendants. Lacking additional detailed information, I have included the DMS segment Advertising & Marketing revenues in my analysis of the Gannett Defendants' profit recognizing an adjustment might be required to eliminate purely marketing related revenue once additional data and information is produced by the Gannett Defendants. As indicated on ATTACHMENT 201, Gannett's DMS Segment Advertising and Marketing Services revenues totaled approximately $411.9 million in 2020 and $441.4 million in 2021.

58. The following Chart summarizes Gannett's digital advertising revenues earned in 2020 and 2021.

| Gannett Digital Advertising Revenue ($ in Thousands) | | | | |
|---|---|---|---|---|
| | | **2020** | | **2021** |
| Publishing Segment - Digital Media Revenue | $ | 341,259 | $ | 361,288 |
| DMS Segment - Advertising & Marketing Services Revenue | | 411,940 | | 441,394 |
| Total Digital Advertising Revenue | $ | 753,199 | $ | 802,682 |

### C. Advertising Revenues During Period Of Infringement

59. Based on the above discussion and analysis, I have estimated the amount of Gannett digital advertising revenues earned during the assumed period of infringement, January 29, 2020, through January 20, 2021. As indicated on ATTACHMENT 200, during the assumed period of infringement, Gannett earned advertising revenues of approximately $695.4 million in 2020 and $44.0 million in 2021 for a total of $739.4 million.

Confidential – Subject To Protective Order

60. Based on the information provided as of the date of this Report, I have also assumed that each of the Gannett Defendants' revenue is included in the revenue information provided in the Gannett public filings.

## STATUTORY DAMAGES

49. I have been asked to quantify the potential recovery for Ms. Campbell under a statutory damages framework.

50. I understand that under The Code, the copyright owner may elect to forgo a recovery of its actual damages or the infringers profits and elect to seek an award for statutory damages for each infringing act by the individual defendants. Applying this damages framework to the seventeen individually named Gannett Defendants results in a range of statutory damages of $12,750 to $510,000. The following Chart details the calculation of the range under a statutory damages framework.[22]

| Range Of Damages Under A Statutory Framework | | | | |
|---|---|---|---|---|
| | Low End | Mid | High End | Maximum If Willful |
| Currently Accused Infringers | 17 | 17 | 17 | 17 |
| Statutory Damages Per Infringement | $ 750 | $ 15,375 | $ 30,000 | $ 150,000 |
| Total Statutory Damages | $ 12,750 | $ 261,375 | $ 510,000 | $ 2,550,000 |

---

[22] I understand that additional Gannett Defendants may be identified as discovery continues.



Confidential – Subject To Protective Order



## James J. Harrington | CPA, CFF | Director

**T** 248.283.0222 • **M** 586.764.2595 • **E** jharrington@mdd.com • 3155 W. Big Beaver, Suite 205 • Troy, MI 48084

### Position

Matson, Driscoll & Damico, LLP – (2018 – Present)
Alvarez & Marsal – (2009 - 2018)
Navigant Consulting – (2004 – 2009)
Tucker Alan, Inc. – (1998 – 2004)
Shore & Azimov – (1997 – 1998)
Parker Wittus – (1995 – 1997)

### Professional Experience

> Professional concentration in matters related to intellectual property disputes, licensing disputes, fraud investigations, mutual fund analysis and securities disputes, claims for increased costs, business interruption loss, breach of contract, accounting investigations and other commercial disputes. Provided expert testimony in matters pending in state court, federal court and arbitration forums.

> Industry experience in agriculture, automotive, chemicals, computers, construction, consumer products, electronics, food service, manufacturing, mining, retail, securities, software, surgical/medical equipment and telecommunications.

### Intellectual Property Matters

> Extensive experience on intellectual property assignments including patent infringement matters, trademark infringement, trade secrets and other intellectual property claims involving lost profits, price erosion, reasonable royalty, unjust enrichment, disgorgement of profits, and pre-judgment and post judgment interest calculations.

> Prepared expert reports on damages issues in connection with intellectual property matters. Deposition and trial testimony also provided.

### Patent Infringement Matters

> Analysis performed on numerous lost profit claims associated with lost unit sales, lost convoyed sales, price erosion, market share erosion, lost head start and other claims of lost profits. Calculated and analyzed the incremental profit for patented products and processes, as well as accused products and processes. Addressed market share issues to evaluate the appropriateness of lost profit claims based on a market share approach. Developed detailed knowledge of leading cases relevant to lost profit damages including Panduit, Rite-Hite, Grain Processing, State Industries v.Mor-Flo and others. Provided expert trial testimony addressing claims of lost profit.

> Retained as the testifying expert on behalf of the patentee in a design patent infringement matter. Patent related to the design of a cell phone charger. Prepared an expert report addressing the amount of profit earned by the defendants on the accused sales. Provided expert deposition testimony on the damages issues.

> Performed reasonable royalty analysis on numerous patent infringement matters. Reasonable royalty analysis included consideration of the Georgia Pacific factors as they relate to the hypothetical negotiation. Reasonable royalty analysis has included consideration and analysis of existing licenses and their comparability to the hypothetical negotiation, established license rates, analytical methods, cost savings, profit improvement, apportionment issues and other considerations. Considered the appropriateness of the entire market value rule in determining the appropriate royalty base. Developed detailed knowledge of leading cases related to reasonable royalty determinations including Georgia Pacific, Panduit, Cornell v. Hewlett Packard, Lucent v. Gateway, Uniloc v. Microsoft, and others. Expert trial testimony included reasonable royalty analysis and reasonable royalty rate determinations.



## James J. Harrington | CPA, CFF | Director

**T** 248.283.0222 • **F** 734.939.0173 • **E** jharrington@mdd.com • 3155 W. Big Beaver, Suite 205 • Troy, MI 48084

### Licensing Disputes

> Analyzed consideration received from licensors on multiple licenses to determine whether more favorable terms were granted to one licensee. Net present value analysis of avoided royalties was applied to calculate possible value of cross-licensing terms.

> Performed royalty audit on behalf of a licensor. Audit included analysis and verification of royalty reports. Analysis included testing of reported sales values included in the royalty base and identification of omitted sales subject to royalties.

### Trademark Matters

> Analyzed actual damages claim related to the use of an alleged infringing trademark. Analysis included the apportionment of the defendant's revenues and profits between infringing and non-infringing sales. Analyzed reasonable royalty considerations related to the asserted trademarks.

### Trade Secrets Matters

> Analyzed actual damages assertions including lost profits and lost value of alleged trade secrets. Considered and analyzed the possible unjust enrichment to the defendant for trade secret disclosure including cost savings and shortened time to market. Also examined reasonable royalty for use of trade secrets.

### Copyright Matters

> Addressed claims of unjust enrichment and disgorgement of profit. Analyzed costs properly considered in determining amount of profit earned on infringing sales. Also addressed claims related to profits on non-infringing sales. Provided expert deposition testimony addressing these issues.

### Forensic Accounting Investigations

> Assisted in a forensic accounting investigation as part of a team supporting the examiner's financial advisor in the bankruptcy proceedings of a major multinational casino operating company. Engagement involved investigating and reporting on several highly complex pre-petition transactions completed by the debtor.

> Analyzed donations received by our client, a charitable organization assisting underprivileged children in Iraq, to determine whether donations made to a related church were being commingled with the charity's funds. Analysis included donations of over $1.2 million covering a five-year period. Reported findings to the charity's management team and members of the board of directors.

> Analyzed historical revenues and expenses of a large apartment complex to assess whether the property manager was improperly using partnership assets for personal gain. Analysis involved review of reported monthly rental revenue and expenditures over a seven-year period in order to identify unusual trends or questionable expenditures.

> Assisted in a fraud investigation relating to alleged excessive/improper reporting of travel and entertainment expenses by the officer of a large not-for-profit organization. Analysis included the review and compilation of expenses reported over a three-year period to evaluate the appropriateness of the expenditures.

### Other Commercial Disputes and Damages Studies

> Analyzed historical sales and financial performance of terminated OEM dealerships to be considered in arbitration proceedings addressing the dealership's claims of improper termination. Provided expert testimony on behalf of the OEM at arbitration.



## James J. Harrington | CPA, CFF | Director

**T** 248.283.0222 • **F** 734.939.0173 • **E** jharrington@mdd.com • 3155 W. Big Beaver, Suite 205 • Troy, MI 48084

> Prepared analysis quantifying claimed lost profits experienced by our client, a Tier 2 automotive supplier, resulting from a claimed breach of a requirements contract by its customer, a Tier 1 supplier. Analysis included determining the amount of lost sales over a forty-two month period and identifying and calculating incremental costs associated with the claimed lost sales. Issued an expert report presenting the analysis and lost profit conclusion and provided deposition testimony.

> Analyzed alleged improper commercial construction loan draws made by the general contractor retained by our client to manage the construction of a local fast-food restaurant. Analysis included determining whether the incurred cost amounts reflected in the sworn statements submitted by the contractor had actually been incurred for work completed by the contractor and subcontractors. Provided a report of our findings and provided expert testimony at arbitration.

> Retained to analyze lost profits claim on behalf of our client, a provider of banking and payment services to medical and recreational cannabis dispensaries and suppliers. Analysis included the determination of existing cannabis wholesale and retail markets in Michigan and Illinois and long-term potential growth trends to support and quantify future lost profit damages.

> Reviewed and analyzed claims of increased costs by our client, a national pizza chain, related to the cancellation of a planned national advertising program based on a "scratch and win" game. Analysis included identifying and calculating additional costs incurred as a direct result of the game cancellation as well as costs incurred in development of the game which resulted in no direct economic benefit to our client.

> In an antitrust matter, performed analysis to rebut claims of below cost pricing on sales made to a major home improvement retail chain. Analysis included the examination of contract selling prices and incremental costs on the accused products and an allocation of one-time rebates and advertising allowances provided to the retailer.

## Mutual Funds and Securities Disputes

> Prepared analysis on trading activities by a mutual fund company executive accused of market timing and other improper trading activity in international and small cap mutual funds. Analysis was performed using daily transactional data for a five-year period on several accounts controlled by the executive. The data was analyzed to identify trading patterns, holding days in equity funds and trading gains and losses realized through longer term holding periods.

> Analyzed a hedge fund company's investment experience in detail to determine the historical return achieved from its investments in mutual funds. Reviewed and analyzed daily trading positions for the hedge fund between money market accounts and equity-oriented mutual funds, confirmed and reconstructed historical trading data, computed daily, monthly and annual returns for the hedge fund from its mutual fund investments and compared the hedge fund's returns to market indexes. We also identified and summarized academic studies addressing excess returns available from actively trading no-load mutual funds based upon movements in the domestic market and other variables.

## Certifications & Memberships

American Institute of Certified Public Accountants
Michigan Association of Certified Public Accountants
National Association of Certified Valuators and Analysts

## Speaking Engagements

Michigan Association of Certified Public Accountants Litigation and Business Valuation Conference, June 2004, *"Damages Issues in Patent Infringement Matters"*.

## Education

1995 Bachelor of Science, Accounting – Oakland University - Rochester, MI



**Summary of Expert Testimony**

> <u>Sportspower, Ltd. v. Crowntec Fitness Mfg. Ltd.</u>, U.S. District Court, Eastern District of Texas, Sherman Division (Expert Report and Deposition testimony), 2021

> <u>Assessment Technologies Institute, LLC v. Cathy Parkes</u>, U.S. District Court, District of Kansas (Expert Report and Deposition testimony), 2021

> <u>955 S. Monroe, LLC and Anthony E. Porter v. D&R Maintenance Management, Inc. and Jason M. D'Herin</u>, 38 ʰ Circuit Court, Monroe, MI (Arbitration testimony), 2020

> <u>Sportspower, Ltd. v. Crowntec Fitness Mfg. Ltd.</u>, U.S. District Court, Central District of California (Expert Report and Deposition testimony), 2019

> <u>Hain Blueprint, Inc., v. Blueprint Coffee, LLC</u>, U.S. District Court, Eastern District of Missouri, Eastern Division (Expert Report and Deposition testimony), 2018

> <u>Star Chrysler, Inc. (d/b/a Bill Kay's Naperville Chrysler) v. Chrysler Group LLC</u>, AAA No. 51-532-000113-10 (Arbitration testimony), 2010

> <u>Ogden Chrysler, Inc. (d/b/a Bill Kay's Chrysler of Downers Grove) v. Chrysler Group LLC</u>, AAA No. 51-532-000114-10 (Arbitration testimony), 2010

> <u>Magnadyne Corporation v. Best Buy Co., Inc. and Ever Win International Corporation</u>, U.S. District Court, Central District of California (Expert Report and Deposition testimony), 2010

> <u>Martin Gubb v. P&M Services, Inc.</u>, U.S. District Court, Eastern District of Michigan, Southern Division (Expert Report, Deposition and Trial testimony), 2007

> <u>Q.C. Onics Ventures, LP v. Johnson Controls, Inc.</u>, U.S. District Court, Northern District of Indiana, Fort Wayne Division (Expert report and Deposition testimony), 2005

**Campbell v. Gannett Company, Inc., et al.**
## Documents and Information Considered

| Beginning Bates | Ending Bates | Beginning Bates | Ending Bates |
|---|---|---|---|
| GANNETT_CAMPBELL  000001 | GANNETT_CAMPBELL  000363 | IPG  000001 | IPG  000031 |

**Documents Not Bearing Batestamping**

**Court documents**

1  Defendant Gatehouse Media Ohio Holdings II, Inc.'s Objections and Responses to Plaintiff's First Request for Production
2  Defendant Gannett Vermont Publishing Inc.'s Objections and Responses to Plaintiff's First Request for Production
3  Defendant Gannett Satellite Information Network, LLC's Objections and Responses to Plaintiff's First Request for Production
4  Defendant Gannett River State Publishing Corporation's Objections and Responses to Plaintiff's First Request for Production
5  Defendant Gannett MHC Media Inc.'s Objections and Responses to Plaintiff's First Request for Production
6  Defendant Visalia Newspapers LLC's Objections and Responses to Plaintiff's First Request for Production
7  Defendant Phoenix Newspapers, Inc.'s Objections and Responses to Plaintiff's First Request for Production
8  Defendant the News Journal Company's Objections and Responses to Plaintiff's First Request for Production
9  Defendant Memphis Publishing Company's Objections and Responses to Plaintiff's First Request for Production
10  Defendant LMG Rhode Island Holdings, Inc.'s Objections and Responses to Plaintiff's First Request for Production
11  Defendant Phoenix Newspapers, Inc.'s Objections and Answers to Plaintiff's First Set of Interrogatories
12  Defendant the News Journal Company's Objections and Answers to Plaintiff's First Set of Interrogatories
13  Defendant Memphis Publishing Company's Objections and Answers to Plaintiff's First Set of Interrogatories
14  Defendant LMG Rhode Island Holdings, Inc.'s Objections and Answers to Plaintiff's First Set of Interrogatories
15  Defendant Journal Sentinel, Inc.'s Objections and Answers to Plaintiff's First Set of Interrogatories
16  Defendant Gatehouse Media Ohio Holdings II, Inc.'s Objections and Answers to Plaintiff's First Set of Interrogatories
17  Defendant Gannett Vermont Publishing Inc.'s Objections and Answers to Plaintiff's First Set of Interrogatories
18  Defendant the Courier Journal, Inc.'s Objections and Answers to Plaintiff's First Set of Interrogatories
19  Defendant Gannett River State Publishing Corporation's Objections and Answers to Plaintiff's First Set of Interrogatories
20  Defendant Gannett MHC Media Inc.'s Objections and Answers to Plaintiff's First Set of Interrogatories
21  Defendant's Response and Objections to Plaintiff's First Request for Production of Documents Directed to Gannett Company, Inc.
22  Defendant CA Florida Holdings, LLC's Objections and Responses to Plaintiff's First Request for Production
23  Defendant Des Moines Register & Tribune Company's Objections and Responses to Plaintiff's First Request for Production
24  Defendant the Journal Sentinel, Inc.'s Objections and Responses to Plaintiff's First Request for Production
25  Defendant Gannett Co., Inc.'s Objections and Answers to Plaintiff's First Request for Interrogatories
26  Defendant Des Moines Register & Tribune Company's Objections and Answers to Plaintiff's First Request for Interrogatories
27  Defendant Visalia Newspapers LLC's Objections and Answers to Plaintiff's First Request for Interrogatories
28  Defendant Gannett Satellite Information Network, LLC's Objections and Answers to Plaintiff's First Request for Interrogatories

**Other**

1  Gannett Co., Inc. December 31,2021 Form 10-K
2  Settlement Agreement and Release - Viacom International Inc.
3  Settlement, License and Release Agreement - Wala-TV (FOX10)
4  License Agreement and Mutual Release - NBCBA
5  Settlement, License and Release Agreement - Oath Inc.
6  Settlement and Release Agreement - Cox Enterprises, Inc.
7  Settlement, License and Release Agreement - Goshen College, Inc.
8  License Agreement and Release of All Claims - ESPN, Inc.
9  Settlement Agreement and Specific Release - KGO Television, Inc.
10  Catch & Release Copyright License Agreement

**Stephanie Campbell v. Gannett Company, Inc. et.al.**
## Range Of Potential Damages Under Statute

|  |  | Low End | | Mid | | High End | | Maximum If Willful | |
|---|---|---|---|---|---|---|---|---|---|
| Currently Accused Infringers | $A$ | | 17 | | 17 | | 17 | | 17 |
| Statutory Damages Per Infringement | $B$ | $ | 750 | $ | 15,375 | $ | 30,000 | $ | 150,000 |
| Total | $C=A*B$ | $ | 12,750 | $ | 261,375 | $ | 510,000 | $ | 2,550,000 |

Confidential
Subject To Protective Order

**Stephanie Campbell v. Gannett Company, Inc. et.al.**
# Summary Of On-Line Advertising Revenue Earned
## During Assumed Period Of Infringement (1/29/20 - 1/20/21)
### ($ In Thousands)

|  |  | 2020 | 2021 | Total |
|---|---|---|---|---|
| Total Revenue Including On-Line Advertising | *A* | $ 753,199 | $ 802,682 | $ 1,555,881 |
| Revenue Per Day | *B=A/365* | 2,064 | 2,199 |  |
| Assumed Days of Infringement In Year | *C* | 337 | 20 |  |
| Revenue Earned During Assumed Infringing Period | *D=B*C* | $ 695,419 | $ 43,983 | $ 739,402 |

Note: Assumed days of infringement based on Gannett disclosure of days Sowers Photograph was assumed to be on the accused infringer's websites. If ongoing discovery indicates the infringing period differs from the disclosed dates this calculation may be updated to reflect the change.

Source: Attachment 201

Confidential
Subject To Protective Order

**Stephanie Campbell v. Gannett Company, Inc. et.al.**
## Summary Of Revenue Including On-Line Advertising
**($ In Thousands)**

|  | 2020 | | 2021 | |
|---|---|---|---|---|
|  | **Amount** | **Percent** | **Amount** | **Percent** |
| Consolidated Revenue | $ 3,405,670 | 100.0% | $ 3,208,083 | 100.0% |
| **Revenue Including On-Line Advertising** | | | | |
|    Publishing Segment - Digital Media Revenue | $ 341,259 | 10.0% | $ 361,288 | 11.3% |
|    DMS Segment - Advertising & Market Services Revenue | 411,940 | 12.1% | 441,394 | 13.8% |
|    Total Revenue Including On-Line Advertising | $ 753,199 | 22.1% | $ 802,682 | 25.0% |

Source: Gannett Company, Inc. Annual Report 2020 (GANNETT_CAMPBELL_000031-157)

and Gannett Company, Inc. Form 10-K for 12/31/21.

Confidential
Subject To Protective Order

**Stephanie Campbell v. Gannett Company, Inc. et.al.**
## Gannett Company Consolidated Revenue By Source
**($ In Thousands)**

|  | 2020 | | 2021 | |
| --- | --- | --- | --- | --- |
|  | Amount | Percent | Amount | Percent |
| **Operating Revenue** |  |  |  |  |
| Print Advertising | $ 901,805 | 26.5% | $ 792,286 | 24.7% |
| Digital Advertising & Marketing Services | 808,439 | 23.7% | 858,875 | 26.8% |
| Total Advertising & Marketing Services | $ 1,710,244 | 50.2% | $ 1,651,161 | 51.5% |
| Circulation | $ 1,391,996 | 40.9% | $ 1,249,674 | 39.0% |
| Other | 303,430 | 8.9% | 307,248 | 9.6% |
| Total Revenue | $ 3,405,670 | 100.0% | $ 3,208,083 | 100.0% |

Source: Gannett Company, Inc. Annual Report 2020 (GANNETT_CAMPBELL_000031-157)
and Gannett Company, Inc. Form 10-K for 12/31/21.

Confidential
Subject To Protective Order

**Stephanie Campbell v. Gannett Company, Inc. et.al.**
## Gannett Company Reported Revenue By Category & Segment
**($ In Thousands)**

| 2020 Revenue | Publishing Segment | DMS Segment | Corporate | Intersegment Elimination | Total | Percent |
|---|---|---|---|---|---|---|
| Advertising & Marketing Services - External | $ 1,295,158 | $ 411,940 | $ 3,146 | $ - | $ 1,710,244 | 50.2% |
| Advertising & Marketing Services - Intersegment | 114,342 | - | - | (114,342) | - | 0.0% |
| Total Advertising & Marketing Services | $ 1,409,500 | $ 411,940 | $ 3,146 | $ (114,342) | $ 1,710,244 | 50.2% |
| Circulation | $ 1,391,983 | $ - | $ 13 | $ - | $ 1,391,996 | 40.9% |
| Other | 278,964 | 16,665 | 7,801 | - | 303,430 | 8.9% |
| Total | $ 3,080,447 | $ 428,605 | $ 10,960 | $ (114,342) | $ 3,405,670 | 100.0% |

| 2021 Revenue | Publishing Segment | DMS Segment | Corporate | Intersegment Elimination | Total | Percent |
|---|---|---|---|---|---|---|
| Advertising & Marketing Services - External | $ 1,207,881 | $ 441,394 | $ 1,886 | $ - | $ 1,651,161 | 51.5% |
| Advertising & Marketing Services - Intersegment | 129,322 | - | - | (129,322) | - | 0.0% |
| Total Advertising & Marketing Services | $ 1,337,203 | $ 441,394 | $ 1,886 | $ (129,322) | $ 1,651,161 | 51.5% |
| Circulation | $ 1,249,669 | $ - | $ 5 | $ - | $ 1,249,674 | 39.0% |
| Other | 299,863 | 905 | 6,480 | - | 307,248 | 9.6% |
| Total | $ 2,886,735 | $ 442,299 | $ 8,371 | $ (129,322) | $ 3,208,083 | 100.0% |

Source: Gannett Company, Inc. Annual Report 2020 (GANNETT_CAMPBELL_000031-157)

and Gannett Company, Inc. Form 10-K for 12/31/21.

Confidential
Subject To Protective Order

**Stephanie Campbell v. Gannett Company, Inc. et.al.**
# Gannett Company Consolidated Operating Results
### ($ In Thousands)

| | 2020 | | | 2021 | |
|---|---|---|---|---|---|
| | **Amount** | **Percent** | | **Amount** | **Percent** |
| **Operating Revenue** | | | | | |
| Publishing | $ 3,080,447 | 90.5% | | $ 2,886,735 | 90.0% |
| Digital Marketing Solutions | 428,605 | 12.6% | | 442,299 | 13.8% |
| Corporate & Other | 10,960 | 0.3% | | 8,371 | 0.3% |
| Intersegment Eliminations | (114,342) | -3.4% | | (129,322) | -4.0% |
| Total Revenue | $ 3,405,670 | 100.0% | | $ 3,208,083 | 100.0% |
| **Operating Expenses** | | | | | |
| Publishing | $ 3,268,911 | 96.0% | | $ 2,653,855 | 82.7% |
| Digital Marketing Solutions | 481,177 | 14.1% | | 422,506 | 13.2% |
| Corporate & Other | 217,812 | 6.4% | | 151,967 | 4.7% |
| Intersegment Eliminations | (114,342) | -3.4% | | (129,322) | -4.0% |
| Total Expenses | $ 3,853,558 | 113.2% | | $ 3,099,006 | 96.6% |
| Operating Income | $ (447,888) | -13.2% | | $ 109,077 | 3.4% |

Source: Gannett Company, Inc. Annual Report 2020 (GANNETT_CAMPBELL_000031-157)
and Gannett Company, Inc. Form 10-K for 12/31/21.

Confidential
Subject To Protective Order

**Stephanie Campbell v. Gannett Company, Inc. et.al.**
## Gannett Company Operating Results - Publishing Segment
### ($ In Thousands)

|  | 2020 | | 2021 | |
| --- | --- | --- | --- | --- |
|  | **Amount** | **Percent** | **Amount** | **Percent** |
| **Operating Revenue** |  |  |  |  |
| Advertising & Marketing Services | $ 1,409,500 | 45.8% | $ 1,337,203 | 46.3% |
| Circulation | 1,391,983 | 45.2% | 1,249,669 | 43.3% |
| Other | 278,964 | 9.1% | 299,863 | 10.4% |
| Total Revenue | $ 3,080,447 | 100.0% | $ 2,886,735 | 100.0% |
| **Operating Expenses** |  |  |  |  |
| Operating Costs | $ 1,842,825 | 59.8% | $ 1,722,473 | 59.7% |
| Selling, General, & Administrative | 787,700 | 25.6% | 736,766 | 25.5% |
| Depreciation & Amortization | 221,746 | 7.2% | 157,212 | 5.4% |
| Integration & Reorganization Costs | 60,852 | 2.0% | 15,960 | 0.6% |
| Asset Impairment | 10,312 | 0.3% | 3,976 | 0.1% |
| Goodwill & Intangible Impairments | 352,947 | 11.5% | - | 0.0% |
| Net (Gain)/Loss On Sale/Disposal Of Assets | (7,541) | -0.2% | 17,468 | 0.6% |
| Total Operating Expenses | $ 3,268,841 | 106.1% | $ 2,653,855 | 91.9% |
| Operating Income | $ (188,394) | -6.1% | $ 232,880 | 8.1% |

Source: Gannett Company, Inc. Annual Report 2020 (GANNETT_CAMPBELL_000031-157) and Gannett Company, Inc. Form 10-K for 12/31/21.

Confidential
Subject To Protective Order

**Stephanie Campbell v. Gannett Company, Inc. et.al.**
## Gannett Company Operating Results - Digital Marketing Solutions Segment
**($ In Thousands)**

| | 2020 | | 2021 | |
|---|---|---|---|---|
| | **Amount** | **Percent** | **Amount** | **Percent** |
| **Operating Revenue** | | | | |
| Advertising & Marketing Services | $ 411,940 | 96.1% | $ 441,394 | 99.8% |
| Other | 16,665 | 3.9% | 905 | 0.2% |
| Total Revenue | $ 428,605 | 100.0% | $ 442,299 | 100.0% |
| **Operating Expenses** | | | | |
| Operating Costs | $ 276,859 | 64.6% | $ 299,014 | 67.6% |
| Selling, General, & Administrative | 128,834 | 30.1% | 92,325 | 20.9% |
| Depreciation & Amortization | 25,878 | 6.0% | 30,061 | 6.8% |
| Integration & Reorganization Costs | 6,663 | 1.6% | 1,710 | 0.4% |
| Acquisition Costs | - | 0.0% | - | 0.0% |
| Asset Impairment | 717 | 0.2% | - | 0.0% |
| Goodwill & Intangible Impairments | 40,499 | 9.4% | - | 0.0% |
| Net (Gain)/Loss On Sale/Disposal Of Assets | 1,727 | 0.4% | (604) | -0.1% |
| Total Operating Expenses | $ 481,177 | 112.3% | $ 422,506 | 95.5% |
| Operating Income | $ (52,572) | -12.3% | $ 19,793 | 4.5% |

Source: Gannett Company, Inc. Annual Report 2020 (GANNETT_CAMPBELL_000031-157)

and Gannett Company, Inc. Form 10-K for 12/31/21.

Confidential

Subject To Protective Order



 Confidential
Subject To Protective Order