**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **STEPHANIE CAMPBELL**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  4:21-cv-00557-RK |
| | ) | |
| **GANNETT COMPANY, INC., et al.**, | ) | |
| | ) | |
| Defendants. | ) | |

**STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF**
**DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (REDACTED)**

Defendants, pursuant to Fed. R. Civ. P. 56 and W.D.Mo. L.R. 56.1(a), for their Statement of Uncontroverted Material Facts in Support of their Motion for Summary Judgment (hereinafter "SUMF") state:

<u>The Parties</u>

1.      Plaintiff Stephanie Campbell is a photographer. (Complaint, Doc. #: 1, ¶ 3).

2.      Defendant Gannett Co., Inc. ("Gannett") is a media and publishing company, owning more than 300 local and national publications and news websites in the United States. (Complaint, Doc. #: 1, ¶¶ 4, 34-38).

3.      Defendant Gannett Satellite Information Network, LLC, an indirect wholly-owned subsidiary of Gannett, is a media company which owns, *inter alia*, USA Today and the Asbury Park Press. (Defendant Gannett Satellite Information Network, LLC's Objections and Answers to Plaintiff's First Set of Interrogatories ("GSIN IG Resp.") Nos. 2 and 3 – Exhibit A).

4.      Each of the 13 remaining Defendants (The Journal Sentinel, Inc.; Gannett MHC Media Inc.; Phoenix Newspapers, Inc.; Gannett Vermont Publishing, Inc.; Gannett River States Publishing Corporation; Gatehouse Media Ohio Holdings II, Inc.; Memphis Publishing Company;

The Courier Journal, Inc.; The News Journal Company; Des Moines Register & Tribune Company; LMG Rhode Island Holdings, Inc.; CA Florida Holdings, LLC; and Visalia Newspapers, LLC) (hereinafter, along with Defendant Gannett Satellite Information Network, LLC, collectively referred to as "Gannett Publication Defendants") is a media company and indirect, wholly-owned subsidiary of Gannett. (Complaint, Doc. #: 1, ¶¶ 6-20, 109-13, 143-47, 177-81, 211-15, 245-49, 279-83, 313-17, 347-51, 381-85, 415-20, 450-55, 485-90, 520-25, 555-60, 590-55; *see also* Defendant Gannett Co. Inc.'s Objections and Answers to Plaintiff's First Set of Interrogatories, ("Gannett IG Resp.") No. 2 – Exhibit B).

5.      Gannett owns and maintains websites for all publications under its umbrella, including all Defendants herein. (Padavick Dep. at 28:19-23 – Exhibit C).

6.      Each Gannett Publication Defendant has access to Gannett's proprietary content management system, called Presto. (Gannett IG. Resp., No. 6 – Exhibit B; *see also* Padavick Dep. at 119:16-120:15 – Exhibit C; Complaint, Doc. #: 1 ¶¶ 54-55, 114, 148, 182, 216, 250, 284, 318, 421, 456, 491, 526, 561, 596)

7.      Each Gannett Publication Defendant is able to share content with one another by uploading content to Presto. (Gannett IG Resp., No. 6 – Exhibit B; *see also* Padavick Dep. at 119:16-120:15; 121:20-23 – Exhibit C; Complaint, Doc. #: 1 ¶¶ 54-55, 114, 148, 182, 216, 250, 284, 318, 421, 456, 491, 526, 561, 596).

8.      Once content is uploaded to Presto, each Gannett Publication Defendant is able to publish that content to in its respective website by linking to the Presto ID associated with that content. (Padavick at 104:15-19; 139:2-23 – Exhibit C).

<u>The Sowers Photo</u>

9.      On August 11, 2017, Plaintiff took the following photograph of National Football League (NFL) coach Katie Sowers ("Sowers Photograph"):



(Complaint, Doc. #: 1, ¶ 30).

10.      Plaintiff describes the Sowers Photo as a "very artistic picture that tells a story," and not "just a snapshot." (Campbell Dep. at 115:3-7; 116:3-4 – Exhibit D).

<u>The Catch&Release License</u>

11.      On or about January 26, 2020, Plaintiff entered into a Copyright License Agreement ("License") with Catch&Release for use of the Sowers Photo in a Super Bowl commercial. (Campbell Dep. Ex. CC (PLT_000126-33) – Exhibit E; Gannett_campbell_000023-30 – Exhibit F).[1]

12.      The License provides, *inter alia*:

You hereby grant to Catch&Release an unlimited (including all lifts, edits and versions) non-exclusive, worldwide, all channels, irrevocable, license to use,

---

[1] Exhibit F is a copy of the License with the amount paid redacted; Exhibit E is an unredacted copy of the License produced by Plaintiff designated as Attorneys' Eyes Only pursuant to the Protective Order issued in this case. Defendants dispute the need for such designation, but submit Exhibit E under seal in accordance with the Protective Order (Doc. #: 46).

3

market, promote, distribute, copy, reproduce, display, record, re-record, electronically publish, publicly display, transmit, broadcast, telecast, publicly perform, modify, alter, cache, synchronize with visual images, create derivative works of, and/or publish the whole or part of the Content, in any media whatsoever (whether now known or hereinafter developed). You grant Catch&Release the right to sub-license any or all of these rights to Microsoft.

*****

You also grant Catch&Release a worldwide, non-exclusive, limited, perpetual, irrevocable, royalty free license to copy, reproduce and publicly display the Content on Catch&Release's website and in other Catch&Release promotional materials in any media whatsoever (whether now known or hereafter developed).

(Campbell Dep. Ex. CC (PLT_000126-33) – Exhibit E; Gannett_campbell_000023-30 – Exhibit F).

13.     The License included no requirement for attribution or other disclosure of Plaintiff's copyright. (Campbell Dep. Ex. CC (PLT_000126-33) – Exhibit E; Gannett_campbell_000023-30 – Exhibit F; *see also* Campbell Dep. at 76: 5-77:18 – Exhibit D[2]).

14.     As consideration for the License, Plaintiff was paid $____ (amount redacted pursuant to Plaintiff's designation as Attorneys Eyes Only under the Protective Order (Doc. #: 46). (Campbell Dep. Ex. CC (PLT_000126-33) – Exhibit E; Gannett_campbell_000023-30 – Exhibit F).

### The "Be The One" Microsoft Ad

15.     Pursuant to the License, the Sowers Photo was used in a commercial for Microsoft entitled "Be The One" ("BTO Ad"). The BTO Ad was about NFL coach Katie Sowers and her achievement as one of the first female NFL coaches and the first woman to coach at a Super Bowl. (BTO Ad – Exhibit G).

---

[2] Though referenced as subject to an Attorneys Eyes Only restriction under the Protective Order (Doc. #: 46) within the deposition, Plaintiff has agreed to withdraw that designation.

16.     The BTO Ad displayed the Sowers Photo at about the 40-second mark. (BTO Ad – Exhibit G).

17.     The BTO Ad was telecast during the NFL Super Bowl on 2020. (Gannett IG Resp., Nos. 16 and 17 – Exhibit B; Campbell Dep. at 46:16-18 – Exhibit D).

18.     In addition to the Super Bowl telecast, the BTO Ad was published on YouTube. (Campbell Dep. at 46:14-15 – Exhibit D).

19.     The Sowers Photo appeared in the BTO Ad without any attribution, restrictive language, or copyright management information associated with the photograph. (BTO Ad – Exhibit G; *see also* P. Dep. at 76:13-16; 77:15-18 – Exhibit D[3]).

## Ad Meter

20.     Every year since 1989, Gannett has conducted a survey of Super Bowl commercials, called "Ad Meter." (Suter Dep. at 19:10-20:14; 28:12-29:9; 35:11-36:15 – Exhibit H; Gannett IG Resp., No. 16 – Exhibit B; Gannett_Campbell_000224 – Exhibit I).

21.     The purpose of Ad Meter is to gauge and rate audience perceptions of Super Bowl commercials. (*Id.*)

22.     Every year since 2012, Ad Meter has been conducted online, and anyone 18 years or older may register to rate each commercial submitted to Ad Meter on a scale of one to ten. (*Id.*).

23.     Once the voting period closes the evening of the Super Bowl, the commercials submitted to Ad Meter are ranked and the results are published. (*Id.*).

24.     Defendants do not create the Super Bowl commercials used in Ad Meter. (Suter Dep. at 28:2-29:22 – Exhibit H; Gannett IG Resp., No. 16 – Exhibit B).

---

[3] Though referenced as subject to an Attorneys Eyes Only restriction under the Protective Order (Doc. #: 46) within the deposition, Plaintiff has agreed to withdraw that designation.

25.     Advertisers and ad agencies do not pay Defendants to include their Super Bowl commercials in Ad Meter, nor do they pay for Defendants' news stories about Ad Meter. (Suter Dep. at 35:2-4 – Exhibit H; Gannett IG Resp., No. 16 – Exhibit B).

26.     Brands or ad agency participants in Ad Meter voluntarily submit their Super Bowl commercials to Ad Meter by uploading their commercials exactly as they are to be seen during the Super Bowl to YouTube prior to the game. (Suter Dep. at 28:12-29:9; – Exhibit H; Gannett IG Resp., No. 16 – Exhibit B; Gannett_campbell_000001-2 – Exhibit J).

27.     Brands or ad agency participants in Ad Meter then send a YouTube link of their respective Super Bowl commercial to Gannett. (Suter Dep. at 28:12-15 – Exhibit H; *see also* Gannett_campbell_000001-2 – Exhibit J; Gannett IG Resp., No. 16 – Exhibit B).

<u>Microsoft's Submission of the BTO Ad to Ad Meter</u>

28.     On or about January 28, 2020, WE Communications, on behalf of Microsoft, submitted the BTO Ad to Rick Suter, Digital Revenue Content Project Manager for the USA Today Sports Media Group, with an affirmative request to include the commercial in Ad Meter, stating: "I would like to submit Microsoft's 2020 Super Bowl ad, 'Be The One,' featuring Katie Sowers to the USA Today Ad Meter." (Gannett_campbell_000006-7 – Exhibit K; Gannett IG Resp. Nos. 16-17 –Exhibit B). The submission included a You Tube link to the commercial. *Id.*

29.     A second request followed, asking, "Can we please be included as part of the USA Today Ad Meter?" (Gannett_campbell_000006-7 – Exhibit K).

30.     Gannett Defendant Publications provide news and information about Ad Meter and promote Ad Meter and the Super Bowl commercials in it as a package through Gannett's content management system, Presto. This is done "to drive awareness of the Ad Meter program overall

and ideally to lead users back to the Ad Meter page itself where they can vote on their favorite ads." (Padavick Dep. at 82:7-24 – Exhibit C; *see also* Suter Dep. at 57:11-13 – Exhibit H).

<u>The Screenshot of the Sowers Photo</u>

31.    When a video is provided to Gannett, or when permission is obtained to use a video, Gannett's standard practice was to use a screenshot from that video as a link for viewing the video. (Padavick Dep. at 56:11-57:16 – Exhibit – C; Rindner Dep. at 57:9-58:9 – Exhibit L).

32.    In placing the Ad Meter-submitted Super Bowl commercials in Presto, Jesse Rindner, a USA Today producer, took a screenshot from the commercial to be used as a link to view the commercial on line. (Rindner Dep. at 57:23-58:24; 69:8-13 – Exhibit L; Padavick Dep. at 66:3-13 – Exhibit C; Gannett IG Resp., No. 16 – Exhibit B).

33.    Rindner selected screenshots that would capture the theme of the commercial and provide viewers with an understanding of the commercial's content. (Gannett IG Resp., No. 16 – Exhibit B hereto; Rindner Dep. at 57:23-58:24; 69:8-13 – Exhibit L). Screenshots are used to provide a representation of the content of the linked video, and without a screen shot, "it would just be a black screen." (Rindner Dep. at 57:23-58:4 – Exhibit L).

34.    Rindner added a title and summary to the screenshots she created to use as links for playing the Super Bowl commercials submitted to Ad Meter. (Rindner Dep. at 47:9-17; 50:4-51:6 – Exhibit L).

35.    In order to create the required screenshot link to view the BTO Ad in Presto, Rindner, took a screenshot of the Sowers Photo from within the BTO Ad (Rindner Dep. at 57:23-58:24; 69:8-13 – Exhibit L; Gannett IG Resp., No. 16 – Exhibit B; *see also* BTO Ad – Exhibit G). The screenshot of the Sowers Photo was limited to the BTO Ad. (Padavick Dep. at 72:2-73:9 – Exhibit C) (it's just in the system as the thumbnail for that video.").

7

36. For the BTO AD, Rindner added the title "Ad Meter 2020: Microsoft" and a summary "Ad Meter 2020: Microsoft highlights Katie Sowers journey to the Super Bowl" to the Sowers Photo. (Rindner Dep. at 47:9-51:7 – Exhibit L).

37. Copies of the screenshot of the Sowers Photo as it appeared on Defendants' web sites are submitted herewith as Exhibit M. Exemplar copies reproduced in Plaintiff's Complaint are set forth below:



(Complaint, Doc. No. 1, ¶ 92).



Complaint, Doc. No. 1, ¶ 161).

38.     According to Robert Padavick, Director of Video and Special Events, Defendants

believed they were permitted to use the screenshot of the Sowers Photo as a screenshot, testifying

as Defendants' designated representative as follows:

> The basis for us, as with all the Ad Meter videos provided to us or specifically to
> this one, is that it was provided to us for inclusion in the Ad Meter program. It was
> provided with no noted -- no restrictions noted as to content within the ad. And
> therefore, as part of the publishing process of the video through Presto, it was an
> entirely reasonable decision on Ms. Rindner's part to select a screengrab from the
> video to represent that video. And a screengrab of the photo in question is a
> reasonable representation of the contents of that video.

(Padavick Dep. at 188:10-25 – Exhibit C).

39.     Rindner likewise believed she was permitted to use the screenshot of the Sowers

Photo, testifying "to me there would be no reason why I wouldn't be able to take a screenshot from

the video that I'm being given and using it." (Rindner Dep. at 41:23-42:1 – Exhibit L;  *see also id.*

at 95:19-25 ("I do think that there is a difference between taking a screenshot of a video that we

were led to believe that we could use. And I feel like I kind of know that I couldn't just Google,

you know, Tom Brady and take any picture off the Internet.")).

40.     Defendants' use of the screenshot of the Sowers Photo was strictly as a link for

playing the BTO Ad. (Campbell Dep. at 63:8-16 – Exhibit D) ("It is a fact that the photograph, the

Sowers photograph, was used as a screen shot link to play the ad.").

41.     Plaintiff has never "seen an instance where the use of the [Sowers Photo] by … any

of the Gannett defendants was not used as a link for playing the ad." (Campbell Dep. at 65:14-20

– Exhibit D).

42.     "[T]here was no other use of the image in any other context other than as an image

representing the video in which it appeared." (Padavick Dep. at 195:10-13 – Exhibit C).

43.     In most cases, the Presto video player displays the screenshot image with a play button over it. (Padavick Dep. at 66:17-25 – Exhibit C).

44.     Neither Rindner nor any Defendant was aware of any restriction involving the Sowers Photo in the BTO Ad. (Gannett IG Resp. No. 16 – Exhibit B; Padavick Dep at 158:5-25; 190:2-19 – Exhibit C).

45.     Ad Meter content, including the submitted Super Bowl commercials and the BTO Ad containing the screenshot of the Sowers Photo, was available to the Gannett Publication Defendants' websites through Gannett's Presto content management system. (Gannett IG. Resp. Nos. 16-17 – Exhibit B).

46.     When the 2020 Super Bowl Ad Meter-submitted commercials went "live" via Presto, they could then be linked to appear on the Gannett Publication Defendants' websites and, conversely, when a commercial was unpublished on Presto, the link went "dead" and was no longer be visible on any site to which it had been linked. (Gannett IG. Resp. Nos. 16-17 – Exhibit B).

47.     The BTO Ad, including the screenshot of the Sowers Photo, was available to and used on Defendants websites in conjunction with 61 other Super Bowl commercials submitted to Ad Meter. (Gannett IG. Resp. Nos. 16-17 – Exhibit B).

48.     The BTO Ad placed ninth out of the 62 commercials that were submitted. (Gannett IG. Resp. Nos. 16-17 – Exhibit B).

49.     Exhibit N hereto (Gannett_campbell_000227-52) is a depiction of the complete line-up of screenshots for the 2020 Super Bowl commercials in Ad Meter as included within Presto, without the Sowers Photo screenshot, which was removed following Plaintiff's notice of alleged infringement. (Gannett_campbell_000238 – Exhibit N; Gannett IG Resp. No. 11 – Exhibit B).

50.     Defendants cannot determine the exact dates the screenshot of the Sowers Photo appeared on the Gannett Publication Defendants' websites. However, it was, at most, the period of January 28, 2020 until receipt of Plaintiff's claim of infringement on or about January 20, 2021. It is also possible the screenshot of the Sowers Photo appeared for a shorter period of time on some of the Defendant websites. (Gannett IG Resp. No. 11 – Exhibit B).

<div align="right">

**LEWIS RICE LLC**

By: */s/ Joseph E. Martineau*
Joseph E. Martineau, No. 32397MO
Lindsey M. Bruno, No. 73055MO
600 Washington Avenue, Suite 2500
St. Louis, MO 63101-1311
Telephone: 314.444.7729
Fax: 314.612.7729
jmartineau@lewisrice.com
lbruno@lewisrice.com

Scott A. Wissel
1010 Walnut, Suite 500
Kansas City, MO 64106
Telephone: 816.472.2568
Fax: 816.472.2500

*Attorneys for Defendants*

</div>

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 6th day of January, 2023, a true copy hereof was served upon the following counsel of record, via e-mail, and that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

Arthur K. Shaffer
McDowell, Rice, Smith & Buchanan, P.C.
605 W. 47th St., Suite 350
Kansas City, MO 64112
ashaffer@mcdowellrice.com

*Attorneys for Plaintiff*

<div align="right">

*/s/ Joseph E. Martineau*

</div>

12

