IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **STEPHANIE CAMPBELL,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**GANNETT COMPANY, INC., et al.,** )<br>)<br>Defendants. ) | Civil Action No. 4:21-cv-00557-RK |

## SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PORTIONS OF THE PROFFERED EXPERT TESTIMONY OF JAMES HARRINGTON

**LEWIS RICE LLC,**

By:/s/ *Joseph E. Martineau*
Joseph E. Martineau, #32397MO
Lindsey M. Bruno, #73055MO
600 Washington Avenue, Suite 2500
St. Louis, MO 63101-1311
Telephone: 314.444.7729
Fax: 314.612.7729
jmartineau@lewisrice.com

Scott A. Wissel
1010 Walnut, Suite 500
Kansas City, MO 64106
Telephone: 816.472.2568
Fax: 816.472.2500

*Attorneys for Defendants*

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT..................................................................................................................... 1

    A. Applicable Law...................................................................................................... 1

    B. Mr. Harrington's Testimony About Defendants' Revenues Should Be Excluded. ................................................................................................................ 4

    C. Mr. Harrington's Opinion that Each Defendant Would Have Entered into a Separate License Agreement with Plaintiff for the Sowers Photo Should be Excluded. ................................................................................................................ 7

III. CONCLUSION.................................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*Advanced Physical Therapy, LLC v. Apex Physical Therapy, LLC*, No. 6:20-CV-03043-RK, 2022 WL 303345 (W.D. Mo. Feb. 1, 2022) ................................................................. 2

*American Auto Ins. Co. v. Omega Flex, Inc.,* 783 F.3d 720 (8th Cir. 2015) ................................. 3

*Amica Mut. Ins. Co. V. Willard*, No. 4:07-CV-1745 DDN, 2009 WL 2982902 (E.D. Mo. Sept. 14, 2009) ............................................................................................................. 5

*Balsley v. LFP, Inc.,* 691 F.3d 747 (6th Cir. 2012) ........................................................................ 6

*Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514 (4th Cir. 2003) .......................... 6

*Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc*., No. CV SAG-18-03384, 2021 WL 5359671 (D. Md. Nov. 17, 2021) ...................................................... 5, 9, 10

*Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039 (8th Cir. 2000) ........................... 3, 4, 10

*D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 516 F. Supp. 3d 121 (D.N.H. 2021) ............................................................................................................................ 6, 8

*Dash v. Mayweather*, 731 F.3d 303 (4th Cir. 2013) ....................................................... 6, 7, 8, 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) ..................... 1, 2, 3, 4, 9, 10

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ............................................................................. 4

*Hallmark Cards, Inc. v. Monitor Clipper Partners,* No. 08-0840-CV-W-ODS, 2012 WL 3047308 (W.D. Mo. July 25, 2012) ............................................................................. 5

*In re Acceptance Ins. Companies Sec. Litig.*, 423 F.3d 899 (8th Cir. 2005) ........................... 4, 11

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ...................................................... 2, 9

*Lauzon v. Senco Prod. Inc*., 270 F.3d 681 (8th Cir. 2001) ............................................................ 2

*Smith v. Bubak*, 643 F.3d 1137 (8th Cir. 2011) ........................................................................ 3, 9

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 768 (N.D. Ill. 2009) ........................... 3

*U.S. v. Downing*, 753 F.2d 1224 (3d Cir. 1985) ........................................................................... 3

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) ............................................................ 4

*Weisgram v. Marley Co.,* 120 S.Ct. 1011 (2000) .......................................................................... 4

**Other Authorities**

17 U.S.C. § 504(b) ............................................................................................................. 5, 7

4 *Weinstein's Federal Evidence* § 702.03[2][a] ............................................................... 3

**Rules**

Federal Rule of Evidence 403 ................................................................................................ 4

Federal Rule of Evidence 702 ......................................................................................... 1, 2, 9

I.  **INTRODUCTION**

Plaintiff has disclosed James Harrington, CPA, CFF, as an expert witness on Plaintiff's alleged damages, assuming Defendants infringed on Plaintiff's copyrighted photograph of Katie Sowers ("Sowers Photo"). (Doc.#: 63). Mr. Harrington has issued two reports. (*See* Expert Report on Damages, Exhibit A and Supplemental Expert Report on Damages, Exhibit B, both submitted under seal pursuant to Protective Order). The opinions expressed in those reports, with the exception of the opinion regarding the licensing value of the Sowers Photo, exceed the permissible bounds of expert testimony and should be excluded by this Court.

Specifically, Harrington's proposed testimony about Defendants' combined revenue from all advertising and subscriptions derived from all content on their websites should be excluded because he does not and cannot attribute those revenues to the allegedly infringed Sowers Photo or explain how those revenues are the result of, or attributable to, Defendants' alleged infringement. Further, his proposed testimony on actual damages, which multiplies the licensing value of the Sowers Photo by the number of Defendants, is divorced from reality and the facts pertaining to licensing in the industry and Defendants' own licensing practices.

II.  **ARGUMENT**

  A.  **Applicable Law**

Federal Rule of Evidence 702, amended after *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the standard for the admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Based on Rule 702, the Eighth Circuit uses a three-part test to determine the admissibility of expert testimony:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Prod. Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted); *see also Advanced Physical Therapy, LLC v. Apex Physical Therapy, LLC*, No. 6:20-CV-03043-RK, 2022 WL 303345, at *1 (W.D. Mo. Feb. 1, 2022). At issue here is the first requirement (relevancy) and the third requirement (reliability).

Plaintiff, as the proponent of Mr. Harrington's expert testimony, has the burden to show its admissibility by a preponderance of the evidence. *See Daubert,* 509 U.S. at 592 & n. 10. Under *Daubert* and progeny, the Court acts as "gatekeeper," admitting only expert testimony that is *both reliable and relevant*, not only as to matters based on "scientific" knowledge, but also "technical" or "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).

To satisfy the relevancy requirement, the proponent of the testimony must show that the expert opinions will be useful and not misleading to the trier of fact in deciding the case. *Smith v. Bubak*, 643 F.3d 1137, 1140-42 (8th Cir. 2011). Expert testimony must be "tied to the facts of the case." *Daubert*, 509 U.S. at 591 (citing *U.S. v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). Where the gap between the facts and the proposed expert testimony is too large, the testimony should be barred. *Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039, 1055 (8th Cir. 2000). Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. *See* 4 *Weinstein's Federal Evidence* § 702.03[2][a]. Similarly, an expert should not be permitted to testify on matters a jury can

2

understand without the expert's help.  *American Auto Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015).

To satisfy the reliability requirement, the "[p]roposed testimony must be supported by appropriate validation – *i.e.,* 'good grounds' based on what is known."  *Daubert*, 509 U.S. at 590.  "The court must [ ] determine that the proffered expert opinions are more than mere speculation or conjecture, but have at their core some reliable basis."  *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 768, 772 (N.D. Ill. 2009).  "Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis."  *Concord Boat Corp.*, 207 F.3d at 1057 (citing *Weisgram v. Marley Co.,* 120 S.Ct. 1011, 1015, 1020 (2000)) (cleaned up).  Expert testimony based only on expert's *ipse dixit* ("say so") is inadmissible.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Because of the powerful and potentially misleading effect of expert evidence, *see Daubert*, 509 U.S. at 595, expert opinions that otherwise meet the admissibility requirements may still be excluded when the probative value of the opinions is substantially outweighed by the potential to confuse or mislead the jury under Federal Rule of Evidence 403.  "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse."  *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004).

Expert testimony that constitutes a legal conclusion is not admissible.  *In re Acceptance Ins. Companies Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005) ("When the expert opinions are little more than legal conclusions, a district court should not be held to have abused its discretion by excluding such statements."); *Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*,

3

No. CV SAG-18-03384, 2021 WL 5359671, at *8-9 (D. Md. Nov. 17, 2021) (excluding an expert's opinions copyright infringement case because they constituted impermissible legal conclusions).

Finally, "experts cannot offer opinions regarding historical facts or matters of intent, motivation, or other thought processes." *Hallmark Cards, Inc. v. Monitor Clipper Partners,* No. 08-0840-CV-W-ODS, 2012 WL 3047308 at *6 (W.D. Mo. July 25, 2012); *see also Amica Mut. Ins. Co. V. Willard*, No. 4:07-CV-1745 DDN, 2009 WL 2982902 at *5 (E.D. Mo. Sept. 14, 2009).

### B. Mr. Harrington's Testimony About Defendants' Revenues Should Be Excluded.[1]

Under Section 504(b) of the Copyright Act, a copyright holder may recover actual damages as well as "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b); *Andreas v. Volkswagon of America, Inc.*, 336 F.3d 789, 795 (8th Cir. 2003). Section 504(b)'s underlying principle is that "when 'the infringement occurs as a small part of a much larger work, the fact finder properly focuses not on the profit of the work overall, but only on the profit that the infringement contributes.'" *Dash v. Mayweather*, 731 F.3d 303, 326 (4th Cir. 2013) (citation omitted).

To meet this statutory burden, a copyright owner has an "affirmative duty" to prove both: "(1) the amount of the claimed revenue streams, and (2) that there is some reasonable relationship 'between the infringement and th[ose] particular profit stream[s].'" *Id.* at 329-30 (alteration in original) (citation omitted); *see also Andreas*, 336 F.3d at 796 (plaintiff has the burden of showing a "nexus" between the infringement and the revenue). As such, a plaintiff must present admissible, non-speculative evidence showing a "causal link" between the infringement and revenue. *Dash*,

---

[1] If the Court grants Defendants' motion for partial summary judgment on Plaintiff's claim for disgorgement of profits (Doc.#: 90), Mr. Harrington's testimony of Defendants' revenues should be automatically excluded as irrelevant.

731 F.3d at 330 (citing *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522-23 (4th Cir. 2003)); *see also Balsley v. LFP, Inc.,* 691 F.3d 747, 767-68 (6th Cir. 2012) (the copyright owner must identify the portion of an infringer's gross revenues that bears a "reasonable relationship" to the alleged infringement); *D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 516 F. Supp. 3d 121, 126 (D.N.H. 2021) ("The First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Federal Circuits have all concluded, in some form, that a copyright owner must show a causal relationship between the infringement and the gross revenue figure presented."). If and only if the plaintiff can establish this connection, the burden shifts to the defendant to prove deductible expenses and/or show that certain revenues were attributable to factors other than the alleged infringement. *Id.*; *see also* 17 U.S.C. § 504(b).

Mr. Harrington opines that while the Sowers Photo appeared on Defendants' websites, Gannett had digital advertising revenue of between $7.449 to $10.641 million and new digital subscriber revenue of $760,000. (Exhibit B at 5-6.) He never explains how those revenues are the result of, or attributable to, Defendants' alleged infringement. (*Id.*) All he does is take Defendants' combined revenue from ***all*** advertising derived from ***all*** content on their websites. He makes no effort to attribute those revenues to the allegedly infringing photograph. (*Id.*) Because of that failure – and the complete lack of evidence attributing these or any revenues to the Sowers Photo, Mr. Harrington's testimony is not useful but instead misleading.

In his deposition, Mr. Harrington admitted to not having "any information whatsoever that [the Sowers Photo] was used as inducement for any advertiser to commission any advertising." (Deposition of James Harrington ("Harrington Dep."), attached hereto as Exhibit C, at 51:4-9). He also admitted he was not suggesting that but for the use of the Sowers Photo, revenue would not have been received. (*Id*. at 52:23-53:2). Acknowledging that his "burden as the plaintiff expert is

5

to ***identify the revenues that are associated with the infringement***," (*id.* at 65:9-11) (emphasis added), he claimed it was enough for him to show that "defendants have advertising revenues that were earned from the advertisers that are placing ads on the page that contains the copyrighted photograph." (*Id.* at 53:3-8). After determining that Defendants had total advertising revenue of over 7 million, he concluded "[t]he defendants' burden is to identify the costs that are properly deducted from those [ ] accused revenues … [and] to identify the revenues that are not properly attributed to that use." (*Id.* at 65:9-22). But that is not the law or the proper legal standard, as addressed in the cases cited above. *See, e.g., D'Pergo Custom Guitars, Inc.*, 516 F. Supp. 3d at 125-26 (rejecting a similar notion by a copyright plaintiff that "it need only present evidence of [the alleged infringer's] gross revenues, which triggers a rebuttable presumption that all of those gross revenues are entirely attributable to the infringement.").

Nothing in Mr. Harrington's original report or supplemental report comes close to meeting Plaintiff's threshold burden of identifying a "reasonable relationship" between the alleged infringement and any particular profit streams. *Dash*, 731 F.3d at 326. All he does is state the obvious – that Defendants, like most media websites, derive revenue from content on their websites. But beyond identifying how much total revenue the websites derive, Mr. Harrington never identifies how that revenue results from, or is "attributed to" a single allegedly infringed photograph included among thousands of other photographs, news articles, videos, and other content on Defendants' websites. The *coup de grâce* on this issue is Mr. Harrington's testimony that he merely "assumed" the existence of "a causal connection between the alleged infringement and any revenues that were derived." (Exhibit C at 72:17-73:3.)[2]

---

[2] An Affidavit submitted by Harrington on March 6, 2023 (Doc. #: 111-35) in which he purports to base his opinion only on relevant revenue for the relevant time period fails to resolve any of these deficiencies.

Defendants do not dispute that Mr. Harrington is a qualified forensic CPA. However, the relevancy and reliability of his testimony is non-existent given that all he does is present staggering revenue figures without in any way tying those figures to the facts or applicable legal criteria – *i.e.*, demonstrating how those figures are attributable to the alleged infringement. As such, his testimony is simply not useful to the trier of fact and is misleading in deciding the case. *See, e.g., Bubak*, 643 F.3d at 1140-42. In fact, this testimony is so fundamentally unreliable that it can offer no reasonable assistance to the jury. Finally, this testimony has a great potential to mislead and confuse the factfinder rather than enlighten it as to any revenues or profits Defendants derived that were "attributable to" the alleged infringement. For these reasons, Mr. Harrington's testimony on revenues should be excluded under Rule 702. *Daubert,* 509 U.S. at 589; *Kumho*, 526 U.S. at 149.

### C. Mr. Harrington's Opinion that Each Defendant Would Have Entered into a Separate License Agreement with Plaintiff for the Sowers Photo Should be Excluded.[3]

Mr. Harrington opines as to Plaintiff's actual damages, asserting that the license fee she received for the use of the Sowers Photo in the Microsoft "Be the One" Super Bowl commercial ("BTO Ad") is an appropriate measure of her actual damages for use of the Sowers Photo (assuming infringement occurred). (Exhibit A at 13). Defendants take no issue with that opinion. But Mr. Harrington's overly simplistic conjecture that each of the Defendants would have separately licensed the photograph for that amount, resulting in 17 total license agreements, meets neither the relevance nor reliability requirements for admission of his testimony. *See, e.g., Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, 2021 WL 5359671, at *6.

---

[3] If the Court grants Defendants' motion for partial summary judgment on Plaintiff's claim for multiple infringement awards against each named Defendant (Doc.#: 92), .Mr. Harrington's testimony on this point should be automatically excluded as irrelevant.

7

In *Brittney Gobble Photography*, the plaintiff alleged that a telecommunications conglomerate infringed on its copyrights in a series of photographs of cats. 2021 WL 5359671, at *1. Among the opinions Plaintiff's proffered expert, Jeffrey Sedlik, sought to provide was that the conglomerate, in distributing the copyrighted photographs to its many subsidiaries and affiliates, committed over 7,000 copyright violations and that the Plaintiff was entitled to recover statutory damages at the highest rate (*i.e.* statutory damages that are triggered by proof of the defendant's "willfulness"). *Id.* at *8-9. In excluding his testimony, the court reasoned:

> A major flaw in Mr. Sedlik's approach is his incorrect assumption that each of the Defendants would have separately licensed each of the photographs. This simply ignores the business model of a global media company—or, for that matter, any "willing buyer." *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (11th Cir. 2000) (holding that an expert's testimony should have been excluded because the expert had not considered the economic realities of the relevant market). Clearly, an administrative catastrophe would ensue if each of [Defendant]'s subsidiaries and affiliates were responsible for negotiating its own licensing agreements for each image it uses.
>
> \* \* \*
>
> Because Mr. Sedlik has simply multiplied the assumed fair market value of a single license by the number of separate licenses that would be needed for each station's use of each photograph, his conclusion is categorically *unreasonable*.
>
> Accordingly, Mr. Sedlik has not reliably applied the lost license fee approach because he has not come remotely close to determining "what a willing buyer would have been reasonably required to pay" BGP for the use of these images. *Dash*, 731 F.3d at 312. Mr. Sedlik's actual damages conclusions, therefore, violate Rule 702 and the *Daubert* standard.

2021 WL 5359671, at *6-7.

Defendants' licensing practices are identical to those recognized by the *Brittney Gobble* court. Here, a USA Today producer took a screenshot of the Sowers Photo from within the BTO Ad to use as a link to view the ad. Through Defendants' integrated content management system, called Presto, the screenshot was made available to certain Gannett news websites for news articles promoting USA Today's Ad Meter, wherein the public can rate Super Bowl commercials.

8

Defendants' practice, which Mr. Harrington discards, is to license photographs from freelance photographers on a companywide basis, covering all affiliates and subsidiaries. *See* Gannett_campbell_000260-268 (Gannett Freelancer Photography Agreement), attached hereto as Exhibit D and Gannett_campbell_000294 (One Time Submission Agreement), attached hereto as Exhibit E. No facts or evidence support the opinion that each Defendant would have separately licensed the Sowers Photo or that Defendants would have entered into more than one separate license agreement for the photograph (let alone 17 separate license agreements). Because no facts support this opinion, allowing the imprimatur of expert testimony to this effect would be extraordinarily misleading. Moreover, to say that there were 17 separate infringements constitutes a legal conclusion, which is impermissible. *See In re Acceptance Ins. Companies Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005) ("When the expert opinions are little more than legal conclusions, a district court should not be held to have abused its discretion by excluding such statements.").

### III.     CONCLUSION

For the reasons explained herein, this Court should enter an Order excluding Mr. Harrington from testifying (1) regarding Defendants' total revenues and (2) that Defendants would have entered into more than one separate license agreement for the Sowers Photo.

Respectfully submitted,

**LEWIS RICE LLC,**

By: */s/ Joseph E. Martineau*
Joseph E. Martineau, #32397MO
Lindsey M. Bruno, #73055MO
600 Washington Avenue, Suite 2500
St. Louis, MO 63101-1311
Telephone: 314.444.7729
Fax: 314.612.7729
jmartineau@lewisrice.com

Scott A. Wissel
1010 Walnut, Suite 500
Kansas City, MO 64106
Telephone: 816.472.2568
Fax: 816.472.2500

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

The undersigned certifies that on this 17th day of March, 2023, a true copy hereof was electronically filed with the Clerk of the Court using the CM/ECF system and by virtue thereof served upon the following counsel of record:

> Arthur K. Shaffer
> McDowell, Rice, Smith & Buchanan, P.C.
> 605 W. 47th St., Suite 350
> Kansas City, MO 64112
> Telephone: (816) 753-5400
> Facsimile: (816) 753-9996

*Attorneys for the Plaintiff*

By: */s/ Joseph E. Martineau*