IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STEPHANIE CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 4:21-cv-00557-RK |
| v. | ) |
| | ) |
| GANNETT COMPANY, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**REPLY SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT ON COUNTS I, II AND III BASED ON FAIR USE**

**I.   RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS ("SAMF")**

Defendants incorporate by reference their Response to the Statement of Additional Material Facts submitted herewith.[1]

**II.  INTRODUCTION**

Because Defendants' use of the Sowers Photo was transformative and did not impact the market value of the photograph, Defendants have moved for summary judgment on Counts I, II,

---

[1] Plaintiff claims Defendants' Statement of Undisputed Material Facts (Doc. #: 96), incorporated into Defendants' Suggestions violates Local Rule 56.1. As recognized by this Court, "Courts within the Eighth Circuit have generally rejected arguments against incorporation-by-reference pleading where the pleading style does not make understanding the claims more burdensome." *Foley Indus., Inc. v. Nelson*, No. 4:21-00309-CV-RK, 2022 WL 3086344, at *4 n.2 (W.D. Mo. Aug. 3, 2022) (citation omitted). Moreover, as noted by this Court, in response to a similar challenge wherein plaintiffs claimed that the defendants' filing of a single, 163-paragraph, comprehensive statement of uncontroverted material facts in support of three motions for summary judgment violated the Rule:

> Local Rule 56.1 does not set forth a definition of a concise statement or place an upper limit on the number of facts that may be included in such suggestions in support. Plaintiffs do not cite, nor has the Court located through its own research, any case in which a Court struck a party's motions for summary judgment for filing a single, consolidated statement of uncontroverted material facts in support of more than one such motion.

*Advanced Physical Therapy, LLC v. Apex Physical Therapy, LLC*, No. 6:20-03043-CV-RK, 2021 WL 4006005, at *1 (W.D. Mo. Sept. 2, 2021).

and III based on fair use. Plaintiff's arguments to the contrary are unavailing and fail to demonstrate any genuine issue of material fact regarding Defendants' entitlement to a fair use defense. Therefore, Defendants respectfully request that the Court grant summary judgment in their favor on each of these three counts.

## III. ARGUMENT

At the outset of her Opposition, Plaintiff refers to Defendants' use of the fair use doctrine as a "post-litigation fiction," suggesting that "[i]f Defendants truly believed they were engaging in fair use at the time [of the alleged infringement], they would have sought advice on doing so." (Doc. #: 111 at 2). Fair use, however, "is a complete defense to an infringement claim." *Bouchat v. Baltimore Ravens Ltd. P'ship*, 737 F.3d 932, 937 (4th Cir. 2013) (citing 17 U.S.C. § 107); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 572-73 (1994) (finding fair use even where the defendant requested plaintiff's permission to use the copyrighted work, was denied, and used the work anyway). Thus, Defendants need not show that they believed they were entitled to a fair use defense at the time of the alleged infringement—indeed, such fact would be entirely irrelevant. The Court should disregard this argument from Plaintiff.

With respect to the first element of fair use ("the purpose and character of the use"), Plaintiff first argues that Defendants' use of the Sowers Photo was not transformative because "[t]here is no obvious change any Defendant made to [the Sowers Photo]." (Doc. #: 111 at 5). In making this argument, Plaintiff demonstrates a fundamental misunderstanding of the meaning of "transformative." As described in Defendants' opening Suggestions, "a transformative use is one that communicates something new and different from the original or expands its utility, thus serving copyright's overall objective of contributing to public knowledge." (Doc. #: 87 at 4 (quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015)).

Defendants' use of the Sowers Photo was transformative, not because Defendants literally transformed or altered the photo into something new, but rather because their use facilitated "criticism, comment, [and] news reporting." (*Id.* (quoting 17 U.S.C. § 107)). Plaintiff seemingly does not deny that Ad Meter facilitates criticism, comment, and news reporting, but claims that because the Sowers Photo was used in news reports about Ad Meter and not on Ad Meter itself, the use does not qualify as transformative. (Doc. #: 111 at 6).[2] However, it is undisputed that the pages on which the Sowers Photo appeared promoted Ad Meter and the BTO Ad, allowed viewers to link to the BTO Ad, and encouraged visitors to navigate to Ad Meter where they could sign up to vote on the Super Bowl commercials, including the BTO Ad within which the Sowers Photo appeared. (Statement of Undisputed Material Facts ("SUMF") ¶¶ 20-23, 30, 37, 42 (Doc. #: 96)). Defendants' use was also transformative because it was functional in that it provided a means to watch and rate the commercial, which argument Plaintiff does not even attempt to address. Thus, Defendants' use of the Sowers Photo to report on and identify the BTO Ad, to promote criticism and commentary of the BTO Ad, and to facilitate viewing the commercial, clearly qualifies as a transformative use.[3]

With respect to the second element of fair use ("nature of the copyrighted work"), Plaintiff dedicates a significant amount of time to describing how the Sowers Photo is a creative work, and

---

[2] Plaintiff also claims that the Defendants used the Sowers Photo "as the single dominant image on a webpage at the center of the screen . . . where almost the entire webpage was filled with [the Sowers Photo]." (Doc. #: 111 at 6). This is untrue. *See* Def's Exhibit M (Doc. #: 96-12) (showing examples of Defendants' use, which examples depict only the portion of the webpage where the Sowers Photo appeared, and not the entire webpage, which included other content).

[3] Plaintiff also argues that the Defendants' use of the Sowers Photo was done in bad faith, which should weigh against a finding a fair use. (Doc. #: 111 at 7-8). Defendants address Plaintiff's argument that any infringement was done in "bad faith" or willfully in their Suggestions in Support of Motion for Partial Summary Judgment that Any Infringement Was Not Willful (Doc. #: 95), and Reply Suggestions filed contemporaneously herewith, which Defendants incorporate herein by reference.

3

thus entitled to a high degree of protection. (Doc. #: 111 at 8-9). This is a "strawman argument." In their opening Suggestions, Defendants never denied the Sowers Photo (like nearly every photograph) is a creative work. (Doc. #: 87 at 10). However, as described in Defendants' opening Suggestions, this factor is afforded little weight in light of the fact that Defendants' use of the Sowers Photo was transformative. (*Id.*). Defendants did not use the Sowers Photo as a link for viewing the BTO Ad due solely to its creative qualities or because it was the best photo of Katie Sowers that they could find anywhere on the Internet. They used it because it appeared within the BTO Ad itself and thus would provide viewers with an understanding of the commercial's content, as well as facilitate their ability to watch the commercial. (SUMF ¶¶ 32-33.) Accordingly, this factor weighs in favor of a finding of fair use.

The same is true with respect to the third factor ("the amount and substantiality of the portion used"). Because Defendants' use of the Sowers Photo "was tethered to a valid, and transformative, purpose" (Doc. #: 87 at 11 (quoting *Google LLC v. Oracle America, Inc.*, 141 S. Ct. 1183, 1205 (2021)), this factor also weighs in favor of a finding of fair use.

With respect to the fourth factor ("market effects"), Plaintiff claims (without support) that Defendants' use of the Sowers Photo somehow prevented "or at least limited" Plaintiff from "granting any broadly exclusive license" of the Sowers Photo to third parties. (Doc. #: 111 at 11). This argument is pure speculation. Plaintiff has presented no evidence that any third party expressed any interest in licensing the Sowers Photo but declined to license it from her because of Defendants' use. Indeed, it took Plaintiff **one year** to even realize that Defendants had used the Sowers Photo as a link for viewing the BTO Ad, further demonstrating the lack of market effects. (SUMF ¶ 50). Aside from several cases wherein a license was forced as part of a copyright infringement claim, the only formal license agreement Plaintiff has entered regarding the Sowers

Photo was the one that pertained to Microsoft's use of the photo in the BTO Ad. (Harrington Damages Report at Attachment 400, Ex. Z to Plaintiff's Opposition). Finally, Plaintiff never explains how she could ever grant an exclusive license to the Sowers Photo to anyone after she had already granted a perpetual, non-exclusive license to C&R for its use of the Sowers Photo in the BTO Ad. (SUMF ¶ 12). That horse has left the barn.

Finally, Plaintiff never explains how Defendants' use of the Sowers Photo could constitute a substitute for the original work when it is undisputed that, in most cases, the Sowers Photo appeared with a play button over top of it. (SUMF ¶ 43). And she does not address the fact that, if an individual truly wished to view or copy the Sowers Photo, the individual would not need to rely on the screenshot that Defendants' use as the link for playing the BTO Ad—he or she could simply play the BTO Ad, which remains available on You Tube, and take a screenshot of the Sowers Photo when it appeared therein. (SUMF ¶ 16). Plaintiff's unsupported argument that Defendants' use of the Sowers Photo somehow created a substitute for the photo or otherwise impacted the photo's market value can be easily rejected. This factor, like the other three, weighs in favor of a finding of fair use.

## IV.  CONCLUSION

Defendants' use of the Sowers Photo as a link for viewing the BTO Ad within which the Sowers Photo appeared is transformative, as it promoted Ad Meter and commentary and criticism of the commercial and served a functional purpose. The market effects of such use are negligible, if any. For all of these reasons, as well as those set forth in Defendants' opening Suggestions, Defendants are entitled to summary judgment on Counts I, II, and III.

Respectfully submitted,

**LEWIS RICE LLC**

By:*/s/ Joseph E. Martineau*
Joseph E. Martineau, #32397MO
Lindsey M. Bruno, #73055MO
600 Washington Avenue, Suite 2500
St. Louis, MO 63101-1311
Telephone: 314.444.7729
Fax: 314.612.7729
jmartineau@lewisrice.com

Scott A. Wissel
1010 Walnut, Suite 500
Kansas City, MO 64106
Telephone: 816.472.2568
Fax: 816.472.2500

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

The undersigned certifies that on this 20th day of March, 2023, a true copy hereof was electronically filed with the Clerk of the Court using the CM/ECF system and by virtue thereof served upon the following counsel of record:

Arthur K. Shaffer
McDowell, Rice, Smith & Buchanan, P.C.
605 W. 47th St., Suite 350
Kansas City, MO 64112
Telephone: (816) 753-5400
Facsimile: (816) 753-9996

*Attorneys for the Plaintiff*

By: */s/ Joseph E. Martineau*