# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-00557-CV-RK |
| | ) | |
| GANNETT COMPANY, INC., | ) | |
| USATODAY SPORTS MEDIA GROUP, | ) | |
| THE NEWS JOURNAL MEDIA GROUP, | ) | |
| THE COURIER-JOURNAL, INC., THE | ) | |
| COURIER-JOURNAL, INC., THE | ) | |
| ARIZONA REPUBLIC, GANNETT | ) | |
| VERMONT PUBLISHING, INC., | ) | |
| GANNETT RIVER STATES | ) | |
| PUBLISHING CORPORATION, | ) | |
| MEMPHIS PUBLISHING COMPANY, | ) | |
| GATEHOUSE MEDIA OHIO HOLDINGS | ) | |
| II, INC., DES MOINES REGISTER AND | ) | |
| TRIBUNE COMPANY, THE | ) | |
| PROVIDENCE JOURNAL COMPANY, | ) | |
| ARGUS LEADER MEDIA, ASBURY | ) | |
| PARK PRESS INC., GATEHOUSE | ) | |
| MEDIA LLC, VISALIA NEWSPAPERS | ) | |
| LLC, JOURNAL SENTINEL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are six motions for summary judgment filed by Defendants Gannett Company, Inc.; Gannett Satellite Information Network, LLC, dba USAToday and The Asbury Park Press of Asbury Park, N.J. (denominated in the complaint as USAToday Sports Media Group, LLC); The News Journal Company, dba News Journal (denominated in the complaint as The News Journal Media Group); The Courier-Journal, Inc., dba Louisville Courier Journal and Florida Today; Phoenix Newspapers, Inc., dba The Arizona Republic (denominated in the complaint as Arizona Republic, Inc., dba AZCentral); Gannett Vermont Publishing, Inc., dba Burlington Free Press; Gannett River States Publishing Corporation, dba The Clarion-Ledger; Memphis Publishing Company, dba The Commercial Appeal; Gatehouse Media Ohio Holdings II, Inc., dba The Columbus Dispatch; Des Moines Register and Tribune Company, dba Des Moines Register; LMG

Rhode Island Holdings, Inc., dba Providence Journal (denominated in the complaint as The Providence Journal Company); Gannett MHC Media, Inc., dba Argus Leader of Sioux Falls (denominated in the complaint as Argus Leader Media, dba Argus); CA Florida Holdings, LLC, dba The Florida Times-Union (denominated in the complaint as Gatehouse Media LLC); Visalia Newspapers LLC, dba Visalia Times – Delta; and The Journal Sentinel, Inc., dba Milwaukee Journal Sentinel. (Docs. 84, 86, 88, 90, 92, 94.) The motions are fully briefed. (Docs. 85, 87, 89, 91, 93, 95, 96, 110-115, 134-140, 173, 174, 177.) For the reasons below, Defendants' motion for summary judgment on Counts I, II and III based on implied license (Doc. 84) is **DENIED**, Defendants' motion for summary judgment on Counts I, II and III based on fair use (Doc. 86) is **DENIED**, Defendants' motion for summary judgment on Count IV alleging removal of copyright management information (Doc. 88) is **GRANTED**, Defendants' motion for partial summary judgment on Plaintiff's claims for disgorgement of profits (Doc. 90) is **GRANTED**, Defendants' motion for partial summary judgment on statutory damages (Doc. 92) is **GRANTED**, and Defendants' motion for partial summary judgment that any infringement was not willful (Doc. 94) is **DENIED**.

## Background[1]

This case involves a dispute regarding a photograph taken by Plaintiff on August 11, 2017, of National Football League coach, Katie Sowers ("Sowers photo"). (Doc. 96 at ¶ 9.) Plaintiff entered into a Copyright License Agreement ("License") on January 26, 2020, with Catch&Release ("C&R") pertaining to the Sowers photo. (*Id.* at ¶ 11.) Pursuant to the License, the Sowers photo was used in a commercial for Microsoft, titled "Be The One" ("BTO ad"). (*Id.* at ¶ 15.) In the BTO ad, a depiction of the Sowers photo showed at about the 40-second mark. (*Id.* at ¶ 16.) The BTO ad aired during the National Football League Super Bowl in 2020. (*Id.* at ¶ 17.) The BTO ad was also available on YouTube. (*Id.* at ¶ 18.)

For decades, Gannett has conducted an annual survey of Super Bowl commercials, called "Ad Meter," through which anyone over 18 years old can register to rate commercials submitted to Ad Meter. (*Id.* at ¶¶ 20, 22.) On January 28, 2020, an email stating, "I would like to submit Microsoft's 2020 Super Bowl ad, 'Be The One,' featuring Katie Sowers to the USA Today Ad

---

[1] Unless otherwise noted, these facts are taken from the parties' statements of uncontroverted material facts. The Court has omitted some properly controverted facts, assertions that are immaterial to the resolution of the pending motions, assertions that are not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.

2

Meter" was sent from chawkins@we-worldwide.com, a representative of Waggener Edstrom Worldwide, Inc. (WE), to rsuter@gannett.com. (*Id.* at ¶ 28; Doc. 110 at Pltf. ¶ 9.) The email included a YouTube link to the BTO ad and high-resolution screenshots from the BTO ad. (Doc. 110 at Pltf. ¶ 9.) The email did not include the Sowers photo. (*Id.*) A second request followed, asking, "Can we please be included as part of the USA Today Ad Meter?" (Doc. 96 at ¶ 29.)

Jesse Rindner, a USA Today [2] producer, downloaded the BTO ad from YouTube and then took a high-resolution screengrab from the commercial that comprised the Sowers photo. Rindner next uploaded the high-resolution screengrab of the Sowers photo and the downloaded video into Presto, Gannett's content management system, and added tags including "USA TODAY" and "Ad Meter." (*Id.* at ¶¶ 30, 32.) Gannett and all of its local and national subsidiary news websites (including but not limited to Defendants) use Presto to share content across the local and national markets. (Doc. 110 at Pltf. ¶ 24.)

Gannett derives revenue from the Ad Meter Platform, which included its own advertisement and sponsorship revenue. (*Id.* at Pltf. ¶ 21.) Gannett did not use the screenshot of the Sowers photo on Ad Meter, but instead on webpages promoting Ad Meter. (*Id.* at Pltf. ¶ 23.) Each Publication Defendant [3] separately determines which content it accesses on Presto to use for its websites and in its publications. (*Id.* at Pltf. ¶ 33.) Each Publication Defendant also had its own editor responsible for keeping its site up to date, curating it, and programming and promoting certain content at its discretion. (*Id.*) Defendants' webpages that included the screenshot of the Sowers photo would have displayed advertisements from which Defendants would receive revenue. (Doc. 140 at ¶ 39.)

The screenshot of the Sowers photo appeared on the websites of the 14 Publication Defendants in this case for some period of time between January 29, 2020, and January 21, 2021. (*Id.* at Pltf. ¶ 31.) In January of 2021, Plaintiff first became aware of Defendants' use of Plaintiff's photograph and shortly thereafter sent a cease-and-desist letter advising that their use was in violation of her intellectual property rights. (*Id.* at Pltf. ¶ 32.)

Plaintiff filed a complaint against Defendants on August 4, 2021, containing four counts:

- copyright infringement in violation of 17 U.S.C. § 501 in Count 1,

---

[2] USA Today is an unincorporated division of Gannett Satellite Information Network, LLC, which is wholly owned by Gannett Co., Inc. (Doc. 119-3.)

[3] The "Publication Defendants" include all defendants except Defendant Gannett Co., Inc.

3

- contributory copyright infringement in violation of 17 U.S.C. § 501 in Count 2,
- vicarious copyright infringement in violation of 17 U.S.C. § 501 in Count 3, and
- copyright infringement in violation of 17 U.S.C. § 1202 in Count 4.

(Doc. 1 at 79-83.)

## Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted). "If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted." *Smith-Bunge v. Wis. Cent., Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019) (citation omitted).

At the summary judgment stage, the movant must "support" its motion either by "citing to particular parts of materials in the record" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Rule 56(c)(1).

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Rule 56(c); *see also Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment). An "adverse party may not rely merely on allegations or denials, but must set out specific facts – by affidavits or other evidence – showing [a] genuine issue for trial." *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (citing Rule 56(e)). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). To controvert a factual position, the nonmoving party must "refer specifically to those portions of the record upon which [he] relies." *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 990 (8th Cir. 2006) (citation omitted).

4

## Discussion

Title 17 U.S.C. § 501(a) defines infringement as the violation "of the exclusive rights of the copyright owner[.]" "Two elements are required to establish copyright infringement, [1] ownership of a valid copyright and [2] copying of original elements of the work." *Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 852 (8th Cir. 2004).

> Once a plaintiff has proven that he or she owns the copyright on a particular work, and that the defendant has infringed upon those "exclusive rights," the defendant is liable for the infringement and this liability is absolute. The defendant's intent is simply not relevant: The defendant is liable even for "innocent" or "accidental" infringements.

*Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 829 (8th Cir. 1992).

### I. Implied License

Defendants argue that because they were impliedly licensed to use the photograph for the limited purpose for which they used it, Defendants are entitled to summary judgment as to Plaintiff's copyright infringement claims in Counts I, II, and III. (Doc. 85 at 4.) In particular, Defendants argue that Plaintiff granted C&R

> an unlimited (including all lifts, edits and versions) non-exclusive, worldwide, all channels, irrevocable, license to use, market, promote, distribute, copy, reproduce, display, record, re-record, electronically publish, publicly display, transmit, broadcast, telecast, publicly perform, modify, alter, cache, synchronize with visual images, create derivative works of, and/or publish the whole or part of the [Sowers Photo], in any media whatsoever (whether now known or hereinafter developed).

(Doc. 85 at 6; Doc. 105 at ¶ 12; Doc. 119-5 at 1.) Defendants contend Plaintiff also granted C&R the right to sublicense any or all of those rights to Microsoft. (Doc. 85 at 7; Doc. 119-5 at 1.)

Defendants assert Microsoft then sublicensed the Sowers photo to Defendants when a representative of WE emailed rsuter@gannett.com January 28, 2020, stating, "I would like to submit Microsoft's 2020 Super Bowl ad, 'Be The One,' featuring Katie Sowers to the USA Today Ad Meter" and included a YouTube link to the BTO ad and high-resolution screenshots from the BTO ad, and by the follow up request, asking, "Can we please be included as part of the USA Today Ad Meter?" Defendant characterizes the exchange as one initiated by WE Communications on behalf of Microsoft and sent to Rick Suter, Digital Revenue Content Project Manager for the USA Today Sports Media Group. Defendants argue that had Microsoft published the Sowers photo using its own content distribution scheme (rather than using Defendants' single distribution

network for distributing it), Plaintiff would not have a claim. Defendants reason Plaintiff should not have a claim here just because Microsoft chose to use Defendants for the distribution.

Plaintiff argues that, at most, the scope of the C&R license as to parties with rights of reproduction ends with Microsoft, and neither the C&R license nor Plaintiff's conduct demonstrate any intent to license the Sowers photo beyond C&R and Microsoft. Plaintiff also asserts the C&R license does not express intent that Microsoft would be allowed to reproduce, distribute, and publish the Sowers photo as part of the advertising model of others. Plaintiff asserts the undisputed facts show Plaintiff's intent was to prohibit further sublicensing of the Sowers photo, as shown by her immediate notification to Defendants to cease and desist when she discovered they were using the Sowers photo and that such use was in violation of her intellectual property rights.

"Proof of the existence of an implied license is an affirmative defense to a copyright infringement claim." *Beaulieu v. Stockwell*, 46 F.4th 871, 878 (8th Cir. 2022) (internal quotation omitted). "Courts may find a nonexclusive implied license where: (1) a person requests the creation of a work; (2) the creator makes the particular work and delivers it to the person who requested it; and (3) the licensor intends that the licensee-requestor copy and distribute the work." *Id.* (internal quotation marks omitted). This type of authorization can be given orally or implied by conduct, whereas an exclusive license cannot. *Id.* "'Consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing.'" *Teter v. Glass Onion, Inc.*, 723 F. Supp. 2d 1138, 1147 (W.D. Mo. 2010) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). The copyright owner permits the use of a copyrighted work in a particular manner by granting an implied license. *Id.*

Here, the C&R license indicates Plaintiff licensed C&R broad rights including rights to reproduce, distribute, and publish the Sowers photo, and to sub-license any or all of those rights to Microsoft. (Doc. 119-5 at 1.) The C&R license does not indicate that Microsoft can sub-license any rights. Defendants have not established undisputed facts indicating Plaintiff intended for anyone beyond Microsoft to reproduce, distribute, and publish the Sowers photo. Defendants have not set forth undisputed facts showing that Plaintiff implied by her conduct, by permission or lack of objection, that the Sowers photo be used by anyone besides C&R and Microsoft. Rather, the undisputed facts are that once Plaintiff became aware of Defendants' use of the Sowers photo, she

promptly sent a cease-and-desist letter advising that their use was in violation of her intellectual property rights in January of 2021. (Doc. 140 at Pltf. ¶ 32.)

Because the express license provided no right to Microsoft to sub-license any rights and because Defendant failed to establish undisputed facts showing Plaintiff implied consent to Defendants' use of the Sowers photo, Defendants are not entitled to summary judgment on Plaintiff's copyright infringement claims in Counts I, II, and III on the grounds that Plaintiff granted them implied license for such use.

## II. Fair Use

Defendants contend that their use of the screenshot of the Sowers photo constituted fair use under 17 U.S.C. § 107 as a matter of law, and so they are entitled to summary judgment as to Plaintiff's copyright infringement claims in Counts I, II, and III. (*Id.*)

Under 17 U.S.C. § 107, "the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. "[F]air use is an affirmative defense" to a claim of copyright infringement. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994). To determine whether a non-owner's use is "fair," a court should consider the following factors:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107(1)-(4). "None of these factors are considered determinative; in applying these factors, courts must tailor the analysis to the individual facts presented in each case." *Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898, 910 (E.D. Mo. 2015) (citing *Campbell*, 510 U.S. at 582. Because "'[f]air use is a mixed question of law and fact,'" it may be resolved on summary judgment only if a reasonable trier of fact could reach just one conclusion. *Antioch Co. v. Scrapbook Borders, Inc.*, 291 F. Supp. 2d 980, 986 (D. Minn. 2003) (quoting *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985)).

### A. Purpose and Character of Use

Defendants argue their use of the Sowers photo facilitated comment, criticism, and news reporting because it was used to promote a program in which viewers compared and ranked their favorite Super Bowl commercials. Defendants also contend their use of the Sowers photo served a different functional purpose than that of the original photograph, specifically, identifying and making the BTO ad available for legitimate commentary and evaluation by allowing a viewer to link to, watch, and evaluate the BTO ad. Plaintiff argues that Defendants' use of the Sowers photo was not remotely transformative but instead substantially identical. Plaintiff contends Defendants' use was simply a reproduction of what was on the screen at the time they grabbed Plaintiff's photograph and does not alter the original with new expression, meaning or message. Plaintiff asserts there was no criticism, comment or news reporting associated with the Sowers photo on Presto and that Defendants did not use the high-resolution screen grab of the Sowers photo on Ad Meter.

A reasonable trier of fact could conclude that the purpose and character of Defendants' use of the Sowers photo was of a commercial nature, and not for nonprofit educational purposes. The character of Defendants' use was not transformative of the Sowers photo – there are no noticeable changes or distinctions, but rather the use was derivative if not virtually identical. Even assuming the purpose of Defendants' use was to make the BTO ad available for commentary and criticism, that purpose itself, in the context of this case, is commercial. *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, No. 21-869, 2023 WL 3511534, at *17 (U.S. May 18, 2023) ("that degree of difference is not enough for the first factor to favor [defendant], given the specific context of the use.") Both positive and negative commentary or criticism for the BTO ad would generate attention for Defendants' webpages and the services and products advertised there. The ultimate goal of making the BTO ad available for commentary and criticism using the Sowers photo is for the Publication Defendants or Gannett to generate more revenue for the Ad Meter service and for any other of their services or products advertised on Defendants' webpages on which the Sowers photo was placed. "[A]lthough a use's transformativeness may outweigh its commercial character, here, both elements point in the same direction." *Andy Warhol Found. for the Visual Arts, Inc.*, 2023 WL 3511534, at *14.

The purpose and character of Defendants' use of the Sowers photo is a factor that a reasonable juror could find weighs in favor of Plaintiff.

8

## B.    Nature of the Copyrighted Work

Defendants argue the nature of the copyrighted work factor should be given little weight in light of Defendants' "transformative use into a purely functional, informational feature." (Doc. 87 at 14.) Plaintiff argues the Sowers photo is entitled to "thick" protection as it is a creative, aesthetic expression of a scene where Plaintiff made many creative choices, including use of a high-resolution, professional camera with a particular type of telephoto lens, deliberate compression of planes, and use of narrow and precise focus on Ms. Sowers' intense facial expression, body language, and involvement in the game. (Doc. 111 at 46.) Plaintiff recognizes that others could take photographs at the game of Ms. Sowers but contends her rights in her expression of that scene are protectable.

"The second statutory factor, 'the nature of the copyrighted work,' recognizes that some works are closer to the core of intended copyright protection than others." *Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898, 911 (E.D. Mo. 2015) (quoting *Campbell*, 510 U.S. at 586). Work that is creative, rather than purely informational, is entitled to greater than protection. *Id.* "[C]opyright's protection may be stronger where the copyrighted material is fiction, not fact, where it consists of a motion picture rather than a news broadcast, or where it serves an artistic rather than a utilitarian function." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1197 (2021). In the context of photographs, the elements of a protectable nature include "the photographer's selection of background, lights, shading, positioning and timing." *Gentieu v. John Muller & Co.*, 712 F. Supp. 740, 742 (W.D. Mo. 1989) (citing *Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53 (1884); *Time, Inc. v. Bernard Geis Assoc.*, 293 F.Supp. 130, 143 (S.D.N.Y. 1968) (type of camera, film and lens, area in which picture taken, positioning of camera, timing); 1 Nimmer on Copyrights § 2.08[E][1] at 2–122 (1988) (angle of photograph, lighting and timing)).

A reasonable juror could conclude that the Sowers photo is mostly creative in nature. Ms. Sowers made history by being the first openly gay coach, the second full-time female coach in the National Football League, and, when the photo was taken, the first female to coach in the Superbowl. A reasonable juror could conclude that Plaintiff's artistic choices and manner of expressing the historic and meaningful scene of Ms. Sowers' contributions to the 2020 Superbowl, to women's progress in sports, and to the LGBTQ+ community are not mainly functional or

9

informational as argued by Defendants. A reasonable trier of fact could find that this factor weighs against fair use because the Sowers photo's nature is primarily creative, not utilitarian.

### C.    Amount and Substantiality of the Portion Used

The Court next considers whether the amount and substantiality of the portion of the Sowers photo Defendants used in relation to the Sowers photo as a whole "is reasonable in relation to the purpose of copying." *Kennedy*, 143 F. Supp. 3d at 911 (internal quotation omitted); 17 U.S.C. § 107(3).

Defendants rely on their claim that their use of the Sowers photo was transformative because they contend its purpose was to link viewers to the BTO ad as justifying their use of the entire Sowers photo. (Doc. 87 at 15.) Plaintiff asserts that Defendants admit they used the entire visible portion of the Sowers photo at a high resolution, and this factor weighs against fair use. (Doc. 111 at 47.)

"[A] small amount of copying may fall outside of the scope of fair use where the excerpt copied consists of the 'heart' of the original work's creative expression." *Google LLC*, 141 S. Ct. at 1205 (internal quotation omitted). "On the other hand, copying a larger amount of material can fall within the scope of fair use where the material copied captures little of the material's creative expression or is central to a copier's valid purpose." *Id.*

Here, the Court has already concluded that a reasonable fact finder could find that the purpose and character of Defendants' use weighs against their fair use affirmative defense. As such that purpose does nothing to justify Defendants' use of the entire photo in high resolution. The entire visible portion of the Sowers photo was used at a high resolution. Thus, the Court finds a reasonable juror could find that the amount and substantiality and portion of the Sowers photo Defendants used weighs against their fair use defense.

### D.    Market Effects

The fourth factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Defendants argue that their use had no significant effects on the marketability of the photograph in that (1) it was not a market substitute because in many cases it was altered to include a play button, (2) it generated no greater likelihood of non-compensated use by others than resulted from its use in the BTO ad itself, which was on television and YouTube without attribution or watermark, (3) it was transformational, and (4) using a screenshot from within the BTO ad video as the means to view the video promotes the sharing of

art and science, and the image is already contained within the published video. (Doc. 87 at 16-17.) Plaintiff argues Defendants' use was not transformative and was merely a duplication of the entirety of the Sowers photo such that it resulted in a cognizable harm. Plaintiff contends Defendants' use interfered with Plaintiff's actual and prospective relationships with clients who might otherwise compensate Plaintiff for the licensed use of the Sowers photo. Plaintiff asserts Defendants' use also prevented or limited Plaintiff from offering and granting any broadly exclusive license of the Sowers photo to other third parties because few clients would consider licensing the Sowers photo from Plaintiff while it was being simultaneously used by and associated with Defendants' endeavors. Plaintiff also argues Defendants' use eliminates Plaintiff's right and ability to control the use and transmission of the Sowers photo.

"Market harm is a matter of degree, and the importance of this factor will vary, not only with the amount of harm, but also with the relative strength of the showing on the other factors." *Campbell*, 510 U.S. at 591 n.21. "[W]hen a commercial use amounts to mere duplication of the entirety of an original, it clearly supersedes the objects of the original and serves as a market replacement for it, making it likely that cognizable market harm to the original will occur." *Id.* at 591 (internal quotation omitted).

Here, a reasonable finder of fact could conclude that the other factors all weigh in favor of Plaintiff and against Defendants' fair use affirmative defense. A reasonable juror could further find that Defendants' use "amounts to a mere duplication of the entirety of [the] original" and "serves as a market replacement for it" with the exception, perhaps, of an unknown number of uses that have play buttons superimposed on the high-resolution copies of the Sowers photo. Accordingly, the Court finds there is a question of triable fact as to whether the market effects factor weighs against a finding of fair use.

Finally, considering the above factors together "in light of the purposes of copyright," *id.* at 578, the Court finds that Defendants have failed to meet their burden of showing they are entitled to judgment as a matter of law on their fair use affirmative defense.

### III. Removal of Copyright Management Information

In Count IV, Plaintiff alleges copyright infringement in violation of 17 U.S.C. § 1202, which prohibits, among other things, knowing removal of copyright management information (CMI) and distribution of works knowing the CMI was removed. Defendants argue no facts or record evidence support Plaintiff's claim that Defendants removed her name or CMI from the

11

Sowers photograph. Defendants contend it is undisputed that the Sowers photo, within the BTO ad, did not include any attribution, restrictive language, or other associated CMI. Defendants assert that the high-resolution screenshot Defendants used came from that ad, entitling them to summary judgment on Plaintiff's copyright infringement claim in Count IV. (Doc. 89 at 4.)

At the summary judgment stage, Plaintiff must present proof of all the essential elements of each claim on which it will have the burden of proof at trial. To succeed on a claim of removal of copyright management information in violation of § 1202, Plaintiff must show each element of 17 U.S.C. § 1202, which provides, in part:

(a) False copyright management information.--No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement--

(1) provide copyright management information that is false, or

(2) distribute or import for distribution copyright management information that is false.

(b) Removal or alteration of copyright management information.--No person shall, without the authority of the copyright owner or the law--

(1) intentionally remove or alter any copyright management information,

(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202.

Copyright management information is defined in § 1202(c) as follows:

any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:

(1) The title and other information identifying the work, including the information set forth on a notice of copyright.

(2) The name of, and other identifying information about, the author of a work.

12

(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

(4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.

(5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.

(6) Terms and conditions for use of the work.

(7) Identifying numbers or symbols referring to such information or links to such information.

(8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

Here, the allegations in Plaintiff's complaint relating to her claim of removal of CMI include that "Gannett and/or USAToday intentionally removed Ms. Campbell's name from the [Sowers photo]," that Defendants then "distributed the copies of [the Sowers photo] knowing that the copyright management information, namely, [Plaintiff's] name had been removed without permission from [Plaintiff]," and that Defendants "knew or had reason to know that the removal of [Plaintiff's] name would induce, enable, facilitate or conceal the infringement of at least one of [her] exclusive rights under 17 U.S.C. §106." (Doc. 1 at ¶¶ 655-657.)

However, in resisting Defendants' motion for summary judgment as to this claim, Plaintiff makes arguments on theories outside the scope of these allegations, in particular arguing removal of third-party CMI and false CMI under § 1202(a). She argues that "[t]he BTO commercial had CMI, including the name 'Microsoft' as the owner of the work and the title of the work appeared as "Microsoft – Be The One (2020) Super Bowl with Katie Sowers" and that "[a]t the time Defendant Gannett obtained a high-resolution screen grab of Plaintiff's Photograph they therefore knew Microsoft was the author and/or owner of the commercial which contained Plaintiff's Photograph" and "removed any CMI from the file without the permission of Microsoft, Catch&Release and/or Plaintiff[.]" (Doc. 112 at 39-40.) Plaintiff further argues that "each publication Defendant posted the photograph with copyright management information that falsely identified [Defendant] as the copyright owner." (*Id.* at 40.)

13

Plaintiff's arguments in her suggestions in opposition to Defendants' motion for summary judgment do not change her pleading. "A plaintiff cannot amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Kennedy*, 143 F. Supp. 3d at 914 (citing *Scott v. Wells Fargo Bank, N.A.*, 2011 WL 3837077, at *10 (D. Minn. Aug. 29, 2011) (and cases cited therein)). Even broadly construing the language of Plaintiff's complaint as it relates to her claim of copyright infringement in violation of 17 U.S.C. § 1202, it only alleges removal of her CMI (not Microsoft's) followed by distribution knowing of the removal as the violations. Plaintiff's complaint does not allege (nor would she likely have standing to allege) violations based on removal of any CMI of non-parties Microsoft or C&R from the BTO ad. Plaintiff's complaint also does not allege a violation through false CMI.

The undisputed facts show that Jesse Rindner, a USA Today producer, downloaded the BTO ad from YouTube and then took a high-resolution screengrab from the commercial that comprised the Sowers photo, then uploaded the high-resolution screengrab of the Sowers photo and the downloaded video into Presto and added tags including "USA TODAY" and "Ad Meter." (Doc. 96 at ¶¶ 30, 32.) Defendants used the screenshot of the Sowers photo on webpages promoting Ad Meter. (Doc. 110 at Pltf. ¶ 23.) The screenshot of the Sowers photo appeared on the websites of the Publication Defendants in this case for some period of time between January 29, 2020, and January 21, 2021. (*Id.* at Pltf. ¶ 31.)

Plaintiff has not presented proof of removal of her CMI or of distribution with knowledge of such removal. It is undisputed that Plaintiff's CMI did not appear on or near the BTO ad or on the still therein of the Sowers photo from which Jesse Ridner took the screengrab that was then placed in Presto and distributed to and through the other Defendants.

Accordingly, the undisputed facts show Defendant is entitled to summary judgment on Plaintiff's Count IV alleging removal of copyright management information as it is pleaded in her complaint.

## IV. Disgorgement of Profits

Defendants assert that because Plaintiff has not and cannot meet her burden of establishing a non-speculative causal connection between Defendants' revenues and the alleged infringement, Defendants are entitled to summary judgment on Plaintiff's claim for disgorgement of profits. (Doc. 91 at 5.) Plaintiff argues she has established a nexus between the acts of infringement and

14

Defendants' profit stream related to its infringement using documentary evidence, deposition testimony, and expert reports. (Doc. 113 at 41.)

"In a claim for disgorgement, the copyright owner is first tasked with establishing a causal nexus between the infringement and the infringer's gross revenues." *Fair Isaac Corp. v. Fed. Ins. Co.*, No. 16-CV-1054 (DTS), 2023 WL 1776135, at *3 (D. Minn. Jan. 11, 2023) (citing 17 U.S.C. § 504(b); *Andreas v. Volkswagen of Am. Inc.*, 336 F.3d 789, 796 (8th Cir. 2003)). "After that nexus is established, 'a rebuttable presumption that the defendant's revenues are entirely attributable to the infringement arises, and the burden then shifts to the defendant to demonstrate what portion of the profits are not traceable to the infringement.'" *Id.* (quoting *Andreas*, 336 F.3d at 796). "The burden of establishing that profits are attributable to the infringed work often gets confused with the burden of apportioning profits between various factors contributing to the profits." *Andreas*, 336 F.3d at 796. To be clear, "the plaintiff has the 'burden' to demonstrate a nexus between the infringement and the indirect profits before apportionment can occur." *Id.* (quoting *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002)).

Defendants primarily rely on *Andreas* and *Mackie*, *supra*, to support their position. In *Andreas*, the Eighth Circuit found that the jury's conclusion that the plaintiff had established a nexus between the defendant's infringing use of his copyrighted work and its profits from the sales of the product advertised in that use, the TT coupe vehicle, was sufficiently supported by the evidence so as to defeat the defendant's motion for judgment as a matter of law as to disgorgement of profits. 336 F.3d at 799. The evidence the Eighth Circuit noted was that (1) the infringement was the centerpiece of a commercial that essentially showed nothing but the TT coupe, (2) the defendant enthusiastically presented the commercial to its dealers as an important and integral part of its launch of the TT coupe into the U.S. market, (3) sales of the TT coupe during the period that the commercial aired were above the defendant's projections, (4) the three commercials received high ratings on surveys that rated consumer recall of the commercials, and (5) the defendant paid its advertising firm a substantial bonus based on the success of the commercials. *Id.* at 796-97. The Eighth Circuit concluded that the district court had erroneously placed the burden of establishing the extent that the infringement contributed to the defendant's profits on the plaintiff rather than on the infringing defendant in ruling for the defendant on its motion for judgment as a matter of law. *Id.* at 799.

15

In *Mackie v. Rieser*, which the Eighth Circuit cited with approval in *Andreas*, the district court had granted partial summary judgment in favor of the defendant on the plaintiff's claim for disgorgement of profits. 296 F.3d at 913. The Ninth Circuit affirmed the ruling, finding the evidence of nexus too speculative. *Id.* at 916. The infringing use of the plaintiff artist's work was featured within a collage including other content that was pictured only on one page of a multipage brochure advertising a concert series, and the plaintiff's claim for 1.5 percent of the defendant's total revenues was based on the defendant's goal of generating a response rate of 1.5 percent to its brochure as a whole. 296 F.3d at 911-12.

Here, Plaintiff's expert James Harrington, a Certified Public Accountant, identified Defendants' revenue from advertising on websites containing Plaintiff's photograph and subscriber revenue related to the Subscribe Now feature on Defendants' websites. The websites also displayed many other photographs, news articles, videos, screenshots from other Super Bowl commercials, and other content during the time they displayed the Sowers photo. Defendants do not compile and have no means to ascertain revenue from a single item of content published on their websites. The websites that included Plaintiff's photograph included advertisements and a Subscribe Now button. Defendants received revenue for the advertisements placed on the webpages that included, among other content, the Sowers photo. Each of Defendants' websites that displayed the Sowers photo displayed it along with advertisements that paid based on the number of impressions.

Harrington's report limits Defendants' digital advertising revenue to that generated by the websites that displayed Plaintiff's Sowers photo during the time it was displayed but does not attempt to limit that revenue any further among other content included on those websites. Harrington's report could not and did not limit Defendants' revenue from the Subscribe Now feature to only websites displaying the Sowers photo. This record more closely resembles that in *Mackie* rather than the one in *Andreas*. Even viewing the evidence in the light most favorable to Plaintiff, the evidence of nexus is too speculative. The infringing use of the Sowers photo was featured within websites that included different and additional content. Plaintiff's claim for Defendants' entire digital advertising revenue and entire new digital subscriber revenue for the time the photo was displayed is based on numbers derived from the websites as a whole. Meaning, Plaintiff's numbers include revenue derived from sources other than the Sowers photo contained on the Defendants' various websites, such as the Subscribe Now feature on Defendants' websites

16

that did not display the Sowers photo. Plaintiff did not and likely cannot remove sources of the business revenue unrelated to the Defendants' infringement.

Plaintiff fails to meet her initial burden of establishing a causal nexus between the infringement and the infringers' gross revenues, so no rebuttable presumption that Defendants' revenues are entirely attributable to the infringement arises, and the burden does not shift to Defendants to demonstrate what portion of the profits are not traceable to the infringement. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for disgorgement of profits.

## V.   Statutory Damages

Defendants contend that because all Defendants are jointly and severally liable with USA Today and Gannett, only one award of statutory damages, if any, would be authorized by statute, not the one award per infringing defendant suggested by Plaintiff. (Doc. 93 at 5.) Plaintiff, on the other hand, contends Defendants have not shown that there is no dispute of material fact as to the issue of joint and several liability. (Doc. 114 at 39.) Plaintiff argues that Gannett, a large media and marketing company, does not manage or maintain the Publication Defendants (all other defendants, each of which maintain digital publications). (*Id.* at 45.) Plaintiff contends that each of the Publication Defendants are independent legal entities that are managed separately, provide no financial benefit to Gannett for their use or access to Presto, manage their publications and websites, and make their own decisions about what content is published on their publications (including their websites). (*Id.*) Plaintiff asserts that Gannett did not cause the publishing defendants to publish the Sowers photo. Rather, Plaintiff claims the Publication Defendants made the independent decision to publish it, and so Plaintiff's claim against Gannett is based on its independent conduct of reproducing Plaintiff's image, and its claims against the Publication Defendants arise out of their independent selection, use, and display of the Sowers photo in each of their separate publications. (*Id.*)

"Liability for copyright infringement may be either direct or vicarious." *Little Mole Music v. Spike Inv., Inc.*, 720 F. Supp. 751, 755 (W.D. Mo. 1989) (citing *e.g., RCA Records v. All-Fast Sys., Inc.*, 594 F. Supp. 335, 337 (S.D.N.Y. 1984); *Sony Corp. v. Universal Studios*, 464 U.S. 417, 436 (1984); *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)). Direct liability results from personal participation in the infringing activity. *Id.* (citing *S. Bell Tel. & Tel. Co. v. Assoc. Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985)). Vicarious liability

17

arises where the defendant has the right and ability "to supervise the infringing activity and [an] obvious and direct financial interest in such an activity." *Id.* (citing *RCA/Ariola Int'l, Inc. v. Grayston Co.*, 845 F.2d 773, 781 (8th Cir. 1988)). "In either context, infringement can result in personal joint and several liability for all those directly or vicariously involved." *Id.* at 755-56.

The Copyright Act allows a plaintiff to choose to recover statutory damages rather than actual damages and lost profits. 17 U.S.C. § 504(c)(1). Under 17 U.S.C. § 504(c)(1), a

> copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in [an] action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

This current language reflects a change from "the wording of the 1909 Copyright Act, which provided that statutory damages were available for 'each infringement that was separate,'" and the change from the earlier versions "moved the statutory damages inquiry from focusing on the number of infringements to focusing on the number of works that were infringed. *Clever Factory, Inc. v. Kingsbridge Int'l, Inc.*, No. 3:11-1187, 2014 WL 2711986, at *1 (M.D. Tenn. June 16, 2014) (citing *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1381 (2d Cir. 1993)). "Within the[] statutory limits, the assessment of damages lies within the court's sound discretion and sense of justice." *Little Mole Music*, 720 F. Supp. at 756 (quoting *Halnat Publ'g Co. v. L.A.P.A., Inc.*, 669 F. Supp. 933, 937 (D. Minn. 1987)).

Courts regularly interpret the statute as providing that "statutory damages are to be calculated according to the number of protected works that are infringed not the number of actual infringements of those works that have occurred." *Clever Factory, Inc.*, 2014 WL 2711986, at *1 (citing *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 947 (9th Cir. 2011); *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 191-94 (1st Cir. 2004); *Twin Peaks, supra; Mason v. Montgomery Data, Inc.*, 967 F.2d 135 (5th Cir. 1992); *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990); *Hamlin v. Trans-Dapt of California, Inc.*, 584 F.Supp.2d 1050, 1056 (M.D. Tenn. 2008)); *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1265 (9th Cir. 2021), cert. denied, 142 S. Ct. 343 (2021) ("the plain meaning of Section 504(c)(1) precludes multiple awards of statutory damages when, as here, there is only one work infringed by a group of defendants that have partial joint and several liability amongst themselves through a prime tortfeasor that is jointly and severally liable with every other defendant.")

18

Where there is a substantial and continuing connection between a parent corporation and its subsidiary with respect to the infringing acts, the two are jointly and severally liable. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1553 (9th Cir. 1989). In finding the defendants jointly and severally liable because of their substantial and continuing connection, the Ninth Circuit in *Frank Music Corp.* found relevant the evidence that the parent company wholly owned the subsidiary; the infringement had multiple purposes, one of which was to promote the parent company and its symbol; only material that the parent company had used in its films was used in the infringing show; the employees of the subsidiary creating the infringing show got clearance for the material they wanted to use in it from the parent company; and the employee of the subsidiary who worked on the infringing show's music used material from the parent company's library. *Id.*

Here, the Defendants are jointly and severally liable. The situation here is analogous to that in *Frank Music Corp.*, in that Gannett and the Publication Defendants have a substantial and continuing connection. The infringing acts all involve the Sowers photo, from placing the high-resolution screenshot from the BTO ad into Presto to its appearance on Publication Defendants' websites. It is undisputed that Gannett is a large media and marketing company and that Presto is its content management system; Gannett and all of its local and national subsidiary news websites (including but not limited to Defendants) use Presto to share content across the local and national markets. It is undisputed that the Publication Defendants each choose content from Gannett's content management system to use for its websites. All Defendants use Gannett's content management system to share, access, use, and promote content Gannett placed there. Gannett put the Sowers photo on Presto, and the Publication Defendants accessed and used it on their websites. Plaintiff contends Gannett does not manage or maintain the Publication Defendants and each of the Publication Defendants is an independent legal entity managed separately that provides no financial benefit to Gannett for use or access to Presto. (Doc. 114 at 8 (citing Doc. 114 at Pltf. ¶¶ 3, 33, 34, 36).) But Gannett supports with evidence its assertion that it is the owner of each of the subsidiary Publication Defendants. (Doc. 140 at 2-4; Doc. 119-3; 96-3 at 5.) Further, the contention that Gannett, the owner of the Publication Defendants, does not financially benefit from providing access to and sharing content from Presto, the content of which Gannett chooses and adds to Presto, is illogical and unsupported by evidence reflecting the ownership structure of Gannett, under whose umbrella all the Publication Defendants are subsidiaries.

19

The undisputed facts and evidence support a finding, as a matter of law, that Gannett and the other Defendants are jointly and severally liable as to any potential award of statutory damages for the infringement of Plaintiff's copyright in the Sowers photo. Plaintiff, therefore, fails to show there is a triable issue of material fact as to joint and several liability. Thus, Defendant is entitled to summary judgment as to the number of statutory damages awards available to Plaintiff, which the Court rules as a matter of law is one.

## VI. Willfulness

Finally, Defendants argue that Defendants were not aware and had no reason to believe that their acts constituted an infringement of Plaintiff's copyright. They thus argue their acts were not willful and no enhancement of damages for willfulness is appropriate. (Doc. 94 at 2.) Defendants reason that because the BTO ad contained the Sowers photo without any attribution, restrictive language, or copyright management information associated with the photo, the producer who made the screenshot was not aware of any such restriction as to the Sowers photo within the BTO ad and had no reason to believe that portion of the ad should be treated differently than the rest of the video. (Doc. 95 at 5.)

Plaintiff asserts that the January 28, 2020 email stating, "I would like to submit Microsoft's 2020 Super Bowl ad, 'Be The One,' featuring Katie Sowers to the USA Today Ad Meter" sent from a representative of WE to rsuter@gannett.com, which included a YouTube link to the BTO ad and high-resolution screenshots from the BTO ad, did not give permission to use the Sowers photo and did not include the Sowers photo. Plaintiff contends producer Jesse Rindner violated Gannett's own copyright policy when Rindner downloaded the BTO ad from YouTube and took a high-resolution screengrab from the commercial that comprised the Sowers photo, then uploaded the high-resolution screengrab of the Sowers photo and the downloaded video into Presto. Plaintiff argues this creates at least a triable issue of fact as to willfulness.

Under § 504(c)(2), if a plaintiff proves and the court finds willfulness as to an infringement, a statutory damages award may be increased. A plaintiff must show the infringer was aware or had reason to believe the subject acts constituted copyright infringement to prove willfulness. § 504(c)(2). Also, "reckless disregard of the copyright holder's rights (rather than actual knowledge of infringement) suffices to warrant award of the enhanced damages." *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir. 1988). "Willfulness is generally

a question of fact and involves elements of intent, reasonableness, and belief." *Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898, 915 (E.D. Mo. 2015).

It is undisputed that Defendants are affiliates in a large, sophisticated media conglomerate that has written policies regarding copyrights, copyright infringement, and avoiding such infringement. The reasonableness of Defendants' purported belief that placing the Sowers photo in Presto and then on the Publication Defendants' websites is an element of the factual inquiry raising a jury question as to willfulness. Based on the facts and circumstances of this case, the Court finds that there is at least an issue of triable fact as to Rindner's willfulness and the potential corresponding liability it places on all the Defendants.

## Conclusion

Accordingly, Defendants' motion for summary judgment on Counts I, II and III based on implied license (Doc. 84) is **DENIED**, Defendants' motion for summary judgment on Counts I, II and III based on fair use (Doc. 86) is **DENIED**, Defendants' motion for summary judgment on Count IV alleging removal of copyright management information (Doc. 88) is **GRANTED**, Defendants' motion for partial summary judgment on Plaintiff's claims for disgorgement of profits (Doc. 90) is **GRANTED**, Defendants' motion for partial summary judgment on statutory damages (Doc. 92) is **GRANTED**, and Defendants' motion for partial summary judgment that any infringement was not willful (Doc. 94) is **DENIED**.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: August 15, 2023